# YIP LAN *v.* INOAOLE AHULII.

## No. 934.

APPEAL FROM CIRCUIT JUDGE, SECOND CIRCUIT.

HON. W. S. EDINGS, JUDGE.

ARGUED MAY 11, 1916.                    DECIDED MAY 23, 1916.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

LANDLORD AND TENANT—*covenant for renewal—exercise of option by lessee.*

A covenant to renew a lease gives the lessee an option which ordinarily he must act upon by giving notice of his intent to renew at or before the end of the term demised. But time is not of the essence of the agreement, unless made so, and the notice being for the benefit of the lessor may be waived by him.

SPECIFIC PERFORMANCE—*covenant to renew lease.*

Equity will decree the specific performance of a covenant to renew a lease where the lessee, within a reasonable time after the expiration of the lease in exercise of the option pays, and the lessor accepts and retains, the rent for the first period upon a new term.

SAME—*parties—decree.*

Persons who, after the making of a contract to convey or lease land, acquire an interest in the land from the vendor or lessor are necessary parties to a bill for the specific performance of the contract. In the absence of a necessary party, the appellate court, if it cannot make a decree which will finally dispose of the controversy, may remand the cause for the purpose of bringing him in.

OPINION OF THE COURT BY ROBERTSON, C. J.

This is a suit to compel specific performance of a covenant contained in a lease for its renewal. The respondent appeals from a decree entered in the court below granting the relief prayed for.

By the lease in question the respondent demised to one J. Mahiai Kaneakua certain land situate at Waiakoa, Kula, Island of Maui, for the term of ten years commencing the first day of June, 1904, at an annual rental of two hundred and fifty dollars payable semi-annually. The lease was dated January 11, 1901, and recorded on April 1, 1901. For some unexplained reason the rental was thereafter increased to two hundred and sixty-five dollars. The bill averred, and the answer admitted, that Kaneakua assigned the lease to one Young Nap, who, in turn, assigned it to one Jun Kum Sou. The bill also alleged that on February 14, 1906, the said Jun Kum Sou assigned to the complainant. This was denied in the answer. At the hearing the complainant introduced in evidence two instruments in the form of receipts for money, dated respectively February 14, and May 7, 1906, and signed by Jun Kum Sou, the latter of which included the statement "I hereby transfer to Yip Lan the lease of land, the building, implements and everything." Counsel for the respondent contends that these instruments were erroneously received in evidence because they were unstamped, citing *O. R. & L. Co. v. Kaili,* 22 Haw. 693. No objection was made to the admission of the evidence at the hearing and the point comes too late when raised for the first time on this appeal. In this connection, it may be pointed out, that there was no real dispute as to the tenancy of the complainant under the original lease. The husband and agent of the respondent testified, and a number of receipts for rent which were introduced showed, that the complainant had held and had been recognized by the respondent as her tenant for a number of years, thus corroborating the complainant's testimony that he had occupied the premises since he acquired the lease in 1906.

It is contended that the court erred in refusing to allow

the respondent to prove that the complainant was bankrupt. It appears from the record that counsel for the respondent started to question the complainant on cross-examination as to whether he owned property in the Territory. An objection having been interposed, counsel stated that he intended to prove that the complainant is bankrupt, meaning, apparently, insolvent. But the court made no definite ruling, no offer of proof was made, and counsel apparently voluntarily abandoned further examination on the point.

It is contended that as the complainant neglected to exercise the renewal option at or before the expiration of the original term he is not entitled to have specific performance of the covenant. The term expired on June 1, 1914. There was evidence showing that on June 2, the complainant gave one Ah Chip one hundred and thirty-two and a half dollars to be remitted to the respondent for the half-year's rent, but it was not until the 10th of June that the money was sent by post-office money orders. On June 6 the complainant received from Ahulii a letter dated June 1, in which the writer stated that the lease had expired, offered to give Yip Lan a new lease at an annual rental of three hundred dollars, asking him to "come at once" if he was agreeable to the new terms, and saying "I will wait for you for one week only." The complainant seems not to have replied to the letter, but he went personally over to Kaupo, arriving at Ahulii's place on June 15. Ahulii and his wife being present, the complainant requested a renewal of the lease. Ahulii replied that it was too late, and that one Fat On, who also was there, had offered three hundred dollars a year. At that time the rent which Yip Lan had remitted had not been received, but, upon being shown the post-office receipts, Ahulii went over to the post-office and got the orders, apparently on the next day. He retained the money and sent Yip Lan a receipt for it. Yip Lan returned

to his home without having received a new lease.  On June
19 the respondent executed a lease of the premises to Fat On
for the term of ten years from June 1, 1914, at the annual
rental of four hundred dollars.  At the same time the Ahu-
liis seem to have made an arrangement with Fat On where-
by Yip Lan should have the right to continue in possession
of the land until January 1, 1915. In a letter dated June 22,
1914, addressed to one Antony Fernandez at Waiakoa,
Kula, Ahulii referred to the leasing of the land to Fat On,
and stated that he had demanded that Yip Lan have the
right to remain on the land until January 1, 1915, in order
that he might take off his crops, and that he had paid Fat
On two hundred dollars for the purpose.  He referred also
to the payment by Yip Lan of one hundred and thirty-two
and a half dollars, that the balance to be paid would be
sixty-seven and a half dollars, and said, "if he consents to
return what I paid then you are to give him this receipt,
and if not, you are to return that receipt, and I will return
these money orders."  The paper which was enclosed with
the letter contained the following:

"Kaupo, June 19, 1914.

"By this I hereby grant permission to Yip Lan, from this
day to the 1st. day of Jan. A. D. 1915, to take his things and
leave everything appertaining to the land of Mrs. Inoaole
Ahulii Jr. for myself.

"Yours truly,
"Fat On

"Per Geo. J. Kunukau

"Kaupo, June 19, 1914.

"Received by me two hundred dollars ($200) from
Joseph Ahulii Jr. for this six months, beginning from June
1, 1914, to Jan 1, 1915.

"Fat On."

There is no evidence that the complainant paid the sixty-
seven and a half dollars or otherwise acceded to the arrange-
ment made between the Ahuliis and Fat On.  On November

23, 1914, the complainant made another remittance of one hundred and thirty-two and a half dollars for rent for the next succeeding half year but it was not accepted by the respondent. The complainant remained in possession of the premises for several months when he was put out by the sheriff, other litigation having intervened. See *Ahulii* v. *Yip Lan,* 22 Haw. 708; 739.

A covenant in a lease for its renewal is a valid agreement of which equity may compel specific performance at the suit of the lessee. A covenant to renew, as distinguished from a privilege to extend, a lease gives the lessee an option which he must ordinarily act upon by giving notice of his intent to renew at or before the end of the term demised. But time is not of the essence of the agreement, unless made so, and the notice, being for the benefit of the lessor, may be waived by him. In the lease under consideration there was no express requirement that the lessee should give notice at or within a specified time. Time was not of the essence of the agreement. By his letter of June 1 the lessor notified the lessee to signify his desire within a week of that date. The lessee, however, remained in possession, forwarded six months' rent, and on the 15th of June personally notified the lessor that he desired the renewal. Up to that time the lessor had not altered her position, and there was nothing to prevent her from complying with her agreement. The option was exercised within a reasonable time, both parties were bound by it, and the lessee became entitled to have the lease renewed on the terms agreed upon. *Caley* v. *Thornquist,* 89 Minn. 348; *Chittenden* v. *Western Union Tel. Co.,* 154 Mich. 1; *McBrier* v. *Marshall,* 126 Pa. St. 390; *Holton* v. *Andrews,* 151 N. C. 340; *Gerhart Realty Co.* v. *Brecht,* 109 Mo. App. 25; *Myers* v. *Silljacks,* 58 Md. 319, 331.

The lessee had paid the rental for the first six months of the new term, and, by accepting it, the lessor waived the

requirement of notice at or before the end of the term. The lessor having accepted and retained the money could not thereafter deny the lessee's right to a new lease and give a valid lease to another who had notice of the lessee's rights in the premises. The lessor could not be permitted to take the lessee's money and then say to him "you are too late." The subsequent attempt of the Ahuliis to devote the money received from Yip Lan to a purpose other than that for which the payment was made, namely, for a six months tenancy under Fat On, was neither authorized nor ratified by Yip Lan, and, therefore, was not binding upon him. No contention has been made by counsel for the appellant that the appellee had voluntarily abandoned or waived his right to demand a renewal of the lease. His action in paying the rent at the rate specified in the covenant plainly shows that he intended to exercise the option.

The contention of the appellant that the decree requiring the execution of a lease to the complainant would be nugatory since Fat On who holds a lease of the premises from the respondent has not been made a party to this suit is well taken. The record shows, moreover, that Fat On has executed certain sub-leases to others, who, presumably, are now in possession of the land, but have not been made parties. "Persons who, after the making of a contract for the conveyance of lands, acquire interest in the lands derived from the vendor, are necessary parties to a bill for the specific performance of the contract." 20 Enc. Pl. & Pr. 415. See also Pomeroy on Contracts (2nd ed.) Sec. 493; 36 Cyc. 761. The decree in this case, in order to be effective, should extinguish the legal rights in the land of Fat On and his sub-lessees. In case of the non-joinder of an indispensable party "the appellate court may, in its discretion, if it cannot make a decree which will finally and properly dispose of the subject-matter of the controversy in the absence of a party, remit the cause for the purpose of

Quarles, J., concurring.

bringing him in." 1 Beach Mod. Eq. Pr., Sec. 78.

The decree is reversed and the case remanded to the circuit judge for further proceedings consistent with this opinion.

*E. Vincent* (*D. H. Case* with him on the brief) for petitioner.

*E. Murphy* for respondent.

### CONCURRING OPINION OF QUARLES, J.

I concur in the conclusion that the judgment must be reversed on the ground stated in the opinion of the court. However, I am of the opinion that the complainant's bill should be dismissed for want of equity, in that it appears in the record and by evidence offered on behalf of the respondent, and refused by the court, that the covenant sought to be specifically performed was waived by the complainant and abandoned by mutual consent of both parties. Failure to perform the covenant, if excused by both parties, will defeat a suit for specific performance. 36 Cyc. 699, 700, and authorities cited in notes. "The right to enforce an agreement in equity is lost when the party seeking performance has consented to a rescission of the contract." 26 Am. & Eng. Ency. L. 134, and authorities cited in notes. When the contract has been abandoned by the party seeking specific performance, or by both parties, specific performance will not be decreed. 26 Am. & Eng. Ency. L. 135, and authorities cited in notes.

The history of the abandonment or waiver suggested, contained in the record, is as follows: June 1, 1914, at the expiration of the option to release contained in the old lease, respondent's husband, J. Ahulii, acting for respondent, wrote to the complainant informing him, in substance, that the lease had expired, and offering to give him a new lease at the increased rental of $300 per year, the complain-

ant to bear the expenses of the papers for the new lease and asking the complainant to come at once if this was agreeable as other parties were wanting the land at a rental of $300 per year. The letter closes with this language: "I wrote to you before but it was returned, and I sent it again to John Miguel, the same letter, and to this day you have made no reply, I will wait for you for one week only, and if I get no answer, then the land will be given to one of those who asked me for the land." The complainant testifies that he received the said letter on the 6th day of June; he also testifies that he asked one Antone Fernandez to write to J. Ahulii, husband of respondent, and that Fernandez did so; he further testifies that he was present when the letter was written, had an interpreter with him and had the letter interpreted to him. This letter was dated June 8, 1914. In this letter, which was offered by the respondent in evidence but refused by the court on the ground that said Fernandez was not shown to be the agent of complainant, Fernandez informs Ahulii that complainant is agreeable to pay a rental of $300 and is ready to send $150 next week for six months' rent. This letter should have been received in evidence as it was unquestionably written by the agent of Yip Lan. The evidence shows further that Antone Fernandez, also known by the name of Akoni, on the 15th of June, 1914, went with Yip Lan and another Chinaman named Tam Choy, to the respondent. Yip Lan and Tam Choy testify that Yip Lan on this occasion agreed to pay rental of $300 per year, and that Ahulii said, "You are too late." The week in which the respondent had voluntarily extended the privilege to Yip Lan to receive another lease at the increased rental of $300 had expired one week before the visit of Yip Lan, Fernandez and Tam Choy to the respondent. On this occasion Yip Lan informed Ahulii that he had sent to him post-office orders for $132.50, Ahulii claiming that he had not received them. On the next day it appears that Ahulii

went to the post-office and received these post-office orders. Four days later, on the 19th, the respondent leased the premises in dispute to Fat On at a rental of $400 per year, and four days afterwards, June 22, Ahulii sent to Fernandez, agent for Yip Lan, the writing in which Fat On agreed that Yip Lan could remain on the premises until the first day of January, 1915, which is set forth in the opinion of the court, and also the receipt given by Fat On to Ahulii for $200 for six months' rent from June 1, 1914, to January 1, 1915, set forth in the opinion of the court. In the letter transmitting this agreement and receipt from Fat On to Fernandez Ahulii used this language: "The money from Yip Lan I have received that in the form of two money orders of the value of $132.50, and this is what remains: if he consents to return what I paid" (to Fat On) "then you are to give him this receipt, and if not, you are to return that receipt, and I will return these money orders. Only yesterday did I receive this letter from Yip Lan. If the Chinaman Yip Lan consents to pay back my money. The amount of $67.50 is the balance of what he is to pay me." This letter was received in evidence and shows, to my mind conclusively, that the respondent never received the $132.50 as rent from Yip Lan from June 1, 1914, to December 31, 1914, on the old lease.

I do not think that Ahulii acted properly in regard to making an arrangement for Yip Lan with Fat On, but he evidently did it through kindness of heart and to prevent Yip Lan from losing his growing crops and to give him the opportunity to mature and harvest them. Yip Lan should have returned the Fat On receipt unless he claimed an advantage under it. Under the circumstances I regard it as clear, from the evidence in this case, that Yip Lan abandoned the covenant in the lease for renewal on the terms stated in the old lease, was willing to take a new lease on different terms, and, after he found that Fat On would pro-

cure a lease or that he could not get a new lease from Ahulii, he then consulted Mr. Tavares, an attorney, and was advised that he could hold under the original covenant. The complainant introduced in evidence some carbon copies of letters, without the signature, said to have been written by Mr. Tavares, and this is indicated in the evidence of Yip Lan,—the one is dated June 20, and the other June 24, 1914,—in which respondent is informed by Tavares that Yip Lan proposes to stand on the original covenant. In my opinion it was too late for him to do so as the evidence of waiver of that covenant is complete, and by retaining the Fat On agreement and receipt to protect his own possession, Yip Lan became, in law, in my opinion, the tenant of Fat On, and should be held to have agreed to the arrangement made by Ahulii with Fat On for the remaining months of 1914, and is not entitled to specific performance of the covenant for renewal in the old lease. The covenant for renewal in the old lease was merely an option which should have been exercised at or before the expiration of the lease, June 1, 1914. Ahulii's letter of June 1 shows that he regarded the lease entirely as terminated, and Yip Lan's actions in the premises show that he did too, but afterwards, on advice of an attorney, sought to go back and stand upon the said covenant in the old lease. A court of equity should not decree specific performance of said covenant under the facts and circumstances shown by the record in this case.