M. Rose *et al. v.* H. H. Parker *et al.*

SUPREME COURT—IN BANCO.

JANUARY TERM—1883.

*McCully, J., Austin, J.. (Judd, C.J., dissenting.)*

M. ROSE ET AL. *vs.* H. H. PARKER ET AL.

EQUITY will intervene to enforce a verbal contract for the sale of lands, notwithstanding the Statute of Frauds, where one party has done certain acts in part execution, and upon the faith of the contract, with the knowledge and consent of the other; if the contract is so far executed that for the latter to repudiate it would amount to a fraud upon the other. Payment for the land, accompanied by possession, is "part performance."

The possession, however, must have delivered or assumed in pursuance of the contract of sale alleged and so retained.

In this case the possession of plaintiffs of unfenced and uncultivated land was referable to a prior agreement for pasturage; and there was nothing in the circumstances to make it against equity to refuse to enforce the agreement.

Respondents ordered to repay purchase money, notwithstanding the Statute of Limitations of personal actions may have run.

Opinion of a majority of the Court by JUDD, C. J.

The Court has taken time to consider deliberately the questions involved in this case, and a majority is now of the

opinion that the decision of the Chancellor, rendered on the 23d September, 1882, declining to decree the enforcement of the agreement for the sale of the land, should be affirmed.

We are, however, of the opinion that, all the parties being now before the Court, the plaintiffs should not be put to their action at law to recover their money paid to the late B. W. Parker, and now order that the same be paid by the respondents to the plaintiffs, without interest, which is offset by the use of the land. See Johnston *vs.* Glancy, 28 Am. Dec., 50.

It is in evidence that the plaintiffs had expressed themselves as willing to receive back from defendants the money paid, and to rescind the contract; but the principal defendant referred them to his counsel, who said he would consider the matter, and no payment was then tendered. When, much later, the defendants offered to pay the money, the plaintiffs answered that they had parted with their interests to the plaintiff, Rose.

We do not think that this refusal to take the money bars the plaintiffs from a right to the relief now granted, since by the judgment of the Court they cannot have the contract of sale executed. To pray for the repayment of the money in the bill for specific performance would be inconsistent.

It is urged that the plaintiffs are barred of this recovery by the Statute of Limitations.

We understand that " Courts of Equity not only act in obedience, and in analogy to the Statute of Limitations in proper cases, but they also interfere in many cases to prevent the bar of the statute where it would be inequitable or unjust." Story's Eq. Jur., Section 1,521.

The circumstances of this case justify us in decreeing repayment, notwithstanding the statute.

Decree accordingly ; costs to be paid by respondents.

J. M. Davidson for plaintiffs.

A. S. Hartwell and W. R. Castle for defendants.

Honolulu, March 1, 1883.

M. Rose *et al. v.* H. H. Parker *et al.*

DISSENTING OPINION OF AUSTIN, J.

It is shown conclusively, and found by the Chancellor, that a verbal contract of sale of the land, as claimed, was made substantially as set forth in the bill. At the time this contract was made the plaintiffs were in possession of the land as tenants of Rev. B. W. Parker, father of defendant (Rev. H. H. Parker), who made the contract, and were using it for the purpose of pasturage. Possession continued after the sale, and at three different times thereafter payments were made and accepted on the purchase money of the land, amounting to $400, and receipts were given showing that they were for purchase of land in the right district, but not specific enough to take the case of the statute. These receipts show that the payments were surely not made on rents. They were not in the nature of rent, and no payment of rent was shown. The continuance of possession after the sale, I think, was not under the lease, but must have been allowed under and in pursuance of the contract of sale.

In this case the possession is not, as in many cases, used as aiding the evidence of sale. That is made out entirely *aliunde.* The effect of mere continuance of possession, which is weak when the actual making of the contract is doubtful, becomes strong, I think, when the contract is sure, and possession goes up, and payments are thereafter made and accepted on the contract.

See Browne on Statute of Frauds, Sections 179, 481, p. 543 ; Wills *vs.* Strading, 3 Vesey, Jr., 378-82 ; Story's Eq. Jur., Volume 2, Section 763.

In addition to that, a house was erected on the land, and occupied for several years. It is proved that soon after the death of Rev. B. W. Parker the party who had occupied that house came to the defendant, Rev. H. H. Parker, and requested permission to retain the house on the land, as his father had permitted it in his lifetime. This is construed by the Chancellor to show that the original leave to build the

house there was permissive merely, and did not accompany or grow out of the contract of sale. With great deference to his opinion, I think that construction is a mistake. If it could be held as admission that she was not a purchaser of the land, that admission would not bind all the others who claimed as such. And I think it was not even an admission binding on her not to claim as purchaser. In a recent case we have held that a party entitled to land could not admit away his right by parol.

The evidence shows that the house was put on the land after the contract of sale was made, and manifestly with Mr. Parker's free consent.. It was not under any lease ; the lease had been abandoned. The erection of a house seems a new departure, and should be held to be allowed and done under the contract of sale. The party in occupation of it wished to avoid trouble with the defendants, and so asked permission to remain. This did not destroy the first effect of putting the house there, which, with the other acts of possession shown, I think, was sufficient part of performance to take the case out of the statute. All apparent laches in the case was properly accounted for. For these reasons, I respectfully dissent from the opinion of the majority of the Court.

Honolulu, January 30, 1883.

---

OPINION OF CHANCELLOR JUDD APPEALED FROM.

This is a bill in equity alleging substantially an oral agreement between the defendant's ancestor, the late B. W. Parker, and certain native Hawaiians to wit : Nakalina and thirteen others, for the sale of a piece of land in Kaneohe, Oahu, described in Royal Patent No. 536, for the sum of $500. The bill also alleged part payment of the purchase money amounting to $400, and that the said deceased put the said orators in possession of the land. M. Rose, a complainant in the bill alleges that these same natives have assigned to him their rights in the land accruing to them by the sale above set

M. Rose *et al. v.* H. H. Parker *et al.*

forth ; also refusal of the defendants, heirs of the said B. W. Parker, to execute the conveyance agreed upon as alleged, also tender of remainder of purchase money. The Court is asked to decree that defendants make and execute a conveyance accordingly, and to enjoin a trespass suit by defendant H. H. Parker against M. Rose.

It appeared by the evidence that some twenty-three persons originally composed this company, many of whom have now deceased, and the bill has been amended accordingly.

There being no evidence that these parties have assigned their interests herein to M. Rose, he is no longer a party except as praying for an injunction against suits for trespass in disturbance of his possession of the land in controversy.

As to Mrs. Mary Parker, widow of the late B. W. Parker, there is no evidence that her right of dower was released, and the claim for this was abandoned at the trial.

This case is one of considerable difficulty. The following are translations of the receipts put in evidence by the plaintiffs:

"$115. This day Paoa and Kapule have correctly paid ($115) one hundred and fifteen dollars for the land of Lipuna in Kaneohe, Island of Oahu.

"(Signed) B. W. PARKER.

"Honolulu, February 2, 1871."

"$115. This day Paoa paid ($115) one hundred and fifteen dollars part payment for the land in Kaneohe.

"(Signed) B. W. PARKER.

"Honolulu, June 3, 1871."

"$70. Kahuakai and Kapule have correctly paid ($70) seventy dollars for the land of Lipuna.

"(Signed) B. W. PARKER.

"Honolulu, June 3, 1871."

"$100. This day Kahuakai has paid ($100) one hundred dollars for the land of Lipuna, at Kaneohe, Island of Oahu.

"(Signed) B. W. PARKER.

"Honolulu, October 28, 1871."

In all $400 was paid. The signatures are shown to be genuine by members of the family of the late B. W. Parker, but none of them have any personal knowledge of the transaction, never hearing of it until after Mr. Parker's death, which occurred in 1877. These receipts are not relied upon by the plaintiffs as forming a memorandum in writing for the sale of land sufficient to satisfy the Statute of Frauds, the specific performance of which can be compelled in equity. It is evident that these receipts do not comply with the requirements of the Statute of Frauds, for they do not state the names of the grantees. " The memorandum must contain the essential terms of the contract with such a degree of certainty that it may be understood without recourse to show the intention of the parties." Browne Statute Frauds, Section 371.

The written memorandum must contain the names of both the contracting parties, *Id.*, Section 372.

The memorandum does not show the price agreed to be paid. This is an essential part of their agreement where, as in this case, a price was stipulated and its omission is fatal. See Browne Statute Frauds, Section 376.

The plaintiffs contend, however, and so allege in their bill as amended, that the contract was oral, and that thereby Mr. Parker agreed to convey for the sum of $500 the land of Lipuna, consisting of about forty-six acres, situate in Kaneohe, Oahu, to a company of natives some twenty-three in number, and the receipts are introduced as evidence that $400 was paid in pursuance of this parol agreement.

The plaintiffs contend that they have proved a verbal contract for the sale of this land and rely on the power with which Courts of Equity are clothed, of compelling the specific execution of the verbal contract (void by the Statute of Frauds), on the ground that the refusal to execute this would amount to practising a fraud upon the plaintiffs.

The correct doctrine upon which this rests appears to be

M. Rose *et al. v.* H. H. Parker *et al.*

that equity will at all times lend its aid to defeat a fraud notwithstanding the Statute of Frauds. See Browne Statute Frauds, Section 437, 438.

Courts of Equity will enforce a verbal contract where the statute itself has been used as a cover to a fraud.

Equity will intervene to enforce a verbal contract notwithstanding the Statute of Frauds where one party has done certain acts in part execution and upon the faith of the contract with the knowledge and consent of the other, and the contract must be so far executed that for the latter to repudiate it would amount to a fraud upon the other party.

Payment alone is not now considered even to the whole amount of the purchase money, part performance so as to justify the enforcement of the contract. Browne Statute Frauds, Section 461, and many cases there cited. The reason for this seems to be that as the money can be recovered in an action at law the parties may be restored to their original position. 1 Story Eq. Juris., Section 761.

Judge Story says in this section that " nothing is to be considered part performance which does not put the party into a situation which is a fraud upon him unless the agreement is fully performed."

But where payment is accompanied by the purchasers taking possession of the land in pursuance of the verbal contract for the purchase of it, a part performance is quite uniformly considered to be shown. Browne Statute Frauds, Section 455, and cases cited.

" But in all cases in which possession is relied upon as an act of part performance, it must appear to be notorious and exclusive possession of the land, and to have been delivered or assumed in pursuance of the contract alleged and so retained or continued." Browne Statute Frauds, Section 472.

The land involved in this case is a tract of unfenced, uncultivated pasture land. It is not claimed that the plaintiffs have made any improvements upon it permanently beneficial

to the estate, except so far as the moving upon it of a house by Makahio, w., is concerned. But Mr. H. H. Parker testifies (uncontradicted) that, after his father's death, Makahio asked his (the witness') permission to continue to have her house on the land, as his father had done in his lifetime. This would make the possession by Makahio a permissive one, and not in pursuance of the alleged contract.

It is admitted in testimony by many witnesses who were parties plaintiff that the natives composing this company had horses, and some say cattle, pasturing on this land under Mr. Parker before any engagement was made to buy the land.

Now the possession of the land (as above stated) must be assumed in pursuance of the contract alleged in order to be part performance ; but in this case the continued possession can be naturally and properly referred to the old tenancy, and does not necessarily imply an agreement between the parties for a sale of the land. The main question always is *quo animo* the possession was taken.

Upon a review of the whole case, the real facts seem to be that the natives composing this company, having the use of this land for pasturage under Mr. Parker, agreed with him in 1871 to buy it for $500, and made payments up to 1873 amounting to $400. They made no improvements on the land. The defendants have paid the taxes all this time. The delay of plaintiffs in seeking a specific performance of the contract for over three years between the last payment and Mr. Parker's death, and for five years after his death, has changed the position of the parties, for the land has now risen considerably in value. There is no written memorandum of the bargain for the sale of the land, which I am at liberty to enforce under the Statute of Frauds of this country. The oral agreement was not accompanied by such acts of part performance by the plaintiffs as to make it against equity and good conscience not to enforce the agreement. Such was apparently the view of the parties plaintiff, for it is shown

that they have repeatedly offered to acquiesce in giving up their purchase, and receiving their money back. Whether this was such a waiver of their right to apply for specific performance of the contract as to estop them in this action I have not fully considered, having come to the conclusion that they have not shown that part performance of the contract which, in the light of the adjudged cases is necessary, in order to entitle them to relief. Bill dismissed.

J. M. Davidson for plaintiffs.

A. S. Hartwell and W. R. Castle for defendants.

Honolulu, September 23, 1882.