W. S. Maule *v.* The Waihee Sugar Company.

## SUPREME COURT—IN BANCO.

HEARD MARCH 7, AS OF APRIL TERM—1883.

*Judd, C. J., Austin, J., (McCully J., dissenting.)*

W. S. MAULE *vs.* WAIHEE SUGAR COMPANY.

A PAROL AGREEMENT for the exchange of lands will be compelled to be executed, if it has been carried into effect with the knowledge and consent of the other contracting party, so that it would be against equity to repudiate it. In this case plaintiff had built houses and made improvements at considerable expense on the land taken by him in exchange, and was in possession of same when defendants purchased ;

HELD, this was notice to defendants of plaintiff's interest in the land

Opinion of a majority of the Court by JUDD, C. J.

After having given mature deliberation to this case a majority of the Court are of the opinion that the plaintiff is entitled to relief.

Referring to the opinion of Mr. Justice McCully for a statement of the bill and answer, and of the undisputed facts of this case, we have arrived at the conclusion that notwithstanding plaintiff entered into occupation of the lot of land owned by the Waihee Plantation under a license to build a house thereon with liberty to remove it when he desired, it is not necessary to refer his continuing occupancy of the land to this license if a new and different agreement is clearly proved by the testimony.

We must concede that the alleged modification of the plaintiffs' tenure during the management of Tallant is not proven with the certainty required in cases like this. And during the ownership of the plantation by Messrs. Harris and Widemann, the deliberate postponement by Mr. Harris of the

making of a deed must be deemed as equivalent to his refusal to do so, and we therefore think that no binding contract of exchange was made by them, for the consent of Mr. Widemann, being only a part owner, would not carry Mr. Harris' interest. Mr. Widemann says, that when he was sole owner he understood the arrangement made by previous owners and plaintiff, and approved of it and promised the plaintiff to make him out a deed, but simply forgot to do so and sold the plantation, making no reservation of this lot.

It also appears by the proofs that Mr. Widemann knew of the improvements made by Maule while he, Mr. Widemann, and Mr. Harris owned the plantation, and that Mr. Widemann fully consented to their being made.

Here, we think, was a distinct and positive agreement on the part of the then proprietor of the plantation to make a conveyance, the execution of which can be compelled. The evidence of Mr. King and Mr. P. N. Makee that Mr. Widemann advised Captain Makee to put plaintiff off cannot affect the plaintiff's right to a conveyance. The only effect is to discredit Mr. Widemann's evidence that he had agreed to give the plaintiff a deed, and we think it is not conclusive, as it is admitted that Mr. Widemann was then endeavoring to persuade Captain Makee to execute the agreement with plaintiff. That Captain Makee, Mr. Widemann's grantee, had notice of the plaintiff's occupancy of the land must be admitted.

"The doctrine seems quite firmly settled that open, notorious, and exclusive possession of real estate under an apparent claim of ownership is notice to those who subsequently deal with the title, of whatever interest the one in possession has in its fee—whether such interest be legal or equitable in its matters." Wade on Notice, Section 273, and many cases there cited.

We cannot explain the fact that Captain Makee looked at the land plaintiff had agreed to give in exchange and that he

W. S. Maule v. The Waihee Sugar Company.

had a survey made of it, which he sent to Mr. Widemann with a request that in addition to the Apanas 2 and 3 of the royal patent he wished Apana 1 and another piece of one-fifth of an acre to be included in order to connect these pieces, except upon the theory that he was then willing to execute the agreement. We may here remark that, it not being shown that Maule objected to the addition of these pieces, it may be presumed that he consented to it and that the agreement was modified accordingly. But whether willing or not, Captain Makee and his successors, with a knowledge that an agreement had been made with a former owner suffered the plaintiff to go on and put expensive improvements on the land amounting to the value of $1,800, and the inference we draw is that he knew that the plaintiff was expecting to receive a deed for this land. If the knowledge that the agreement had been made came to Mr. Makee subsequent to his purchase, this does not weaken the force of his acquiescence in the improvements made by plaintiff.

It is urged upon us that the delay in settling the matter indicates that no definite agreement had ever been arrived at. But, as far as the plaintiff's dealings with the owners previous to Mr. Makee are concerned, the delay was certainly theirs, and not his.

Mr. Widemann says he must have had a dozen conversations with Mr. Maule on the matter.

We think that the inference to be drawn from Mr. P. N. Makee's statement that he gave orders not to cultivate Maule's land, or have anything to do with it is, that up to that time the plantation had had possession of the land. This must be so, or there would be no necessity for these orders. We hardly think the confusion in the identity of these kalo patches among many others would be sufficient to account for these orders. But if Maule had abandoned the possession of these patches to the plantation, Makee, desiring to repudiate the agreement, would naturally make such orders.

W. S. Maule v. The Waihee Sugar Company.

The transaction of plaintiff with Mr. C. Brown in mortgaging his land is fully explained by Mr. Brown, who says that plaintiff told him he had no title to his house-lot, but agreed to substitute it for his kalo land whenever he should get his deed.

The validity of plaintiff's title to the land to be given by him in exchange was questioned at the hearing by the defendant. The proper time to make enquiry into this title was when negotiations for the exchange were pending; but we are of the opinion that the plaintiff should be required to show his title to the satisfaction of a Master of this Court, and if he fails in this we cannot compel the execution of the deed by defendant.

The plaintiff now says he is willing to include in his deed Apana 1 of the royal patent, and the parcel of 5-100 of an acre required by Captain Makee, in addition to the two apanas he originally agreed to give. We think he should be held to the offer made.

On the well-settled doctrine that a parole agreement to sell or exchange lands will be compelled to be executed if it has been carried into effect with the knowledge and consent of the other contracting party, so that it would be against equity to repudiate it, we hold that the agreement of exchange in this case should be ordered. A decree in accordance with this decision will be signed on presentation by counsel.

A. S. Hartwell for plaintiff.

F. M. Hatch for defendant.

Honolulu, March 16, 1883.

_____

DISSENTING OPINION OF MR. JUSTICE McCULLY.

Upon the hearing in banco I find myself unable to arrive at a different conclusion from that expressed in my former decision, which must now appear as a dissenting opinion. The chief point which is new or more fully presented for the plaintiff in the agreement before the Court is that the plaintiff

W. S. Maule *v.* The Waihee Sugar Company.

upon the faith of Mr. Widemann's promises to make the exchange and give him a deed, made expenditures which established for him an equitable claim to a deed. I do not see that the plaintiff's (own) new evidence supports this. Mr. Widemann was sole owner only from August 2 to September 20, 1876, and plaintiff made no expenditure on the place within that period. The plaintiff now for the first time proffers to give in exchange what it is said Captain Makee was willing to take for his own piece. He has not yet acquired one of the pieces which he is to give, and he has not yet shown a clear title to the "Pila" pieces. The decree of the Court is conditional. I am unable to find that the plaintiff may now complete his bargain if he has not previously made one that was definite in its terms and at time agreed to by both parties, and that the terms were these terms.

Honolulu, March 16, 1883.

OPINION OF MR. JUSTICE McCULLY APPEALED FROM.

The bill sets forth that in 1868 the owner of the Waihee Sugar Plantation gave permission to the complainant to occupy and build a residence on a piece of land about 37–100 acres in extent, and that in pursuance of this permission he built a residence on and has since occupied this lot.

That at some time after 1868, and while the plantation was owned by Messrs. Harris and Widemann, their agent and manager and with their knowledge and approval agreed to an exchange, with title in fee simple of this lot for certain land owned by the complainant, and that such agreement of exchange has been assented to and ratified by the successive owners of the plantation including the defendants, and that the defendants by virtue of the exchange took possession of and now hold the complainant's land, and that the complainant has offered to interchange deeds in pursuance of the agreement which defendant now declines to do. And prays that the defendant be restrained by injunction from proceeding in

81

a suit of ejectment for these premises, and be required to exe-
cute and deli&eeds, etc.

The answer&mits complainant's possession and improve-
ments, but denies knowledge of the agreement of exchange,
denies possession of complainant's land, alleges demand and
suit of ejectment brought and pleads the Statute of Frauds.

The further and fuller history of the transaction as shown
by the testimony is as follows:    The complainant testifies that
he worked for the late Christopher H. Lewers (who founded
the Waihee Sugar Plantation), and that Mr. Lewers desired
he should live nearer the mill than his own premises, and said
he must have a place for building, and gave him the follow-
ing license which is filed:

"This is to certify that permission has been granted to. W.
S. Maule to build on plantation land, and that should he after
building choose to take down his house and remove it else-
where he is at liberty to do so.

"(Signed)                SAMUEL T. ALEXANDER,.
                         "for C. H. LEWERS..

"Waihee, June 5, 1868."

The word "houses" appears to have been changed from
"house" by addition of "s," and an inappropriate apostrophe
written with different ink, and by a person of imperfect
knowledge of English.    Mr. Alexander was then the planta-
tion manager.    The complainant thereupon built one, and
subsequently two or three, on this land.

That 1871 or 1872 Mr. Tallant, who succeeded Mr. Alex-
ander as manager, assented to an exchange—the plantation to
take a piece belonging to the complainant for the piece he
was occupying, and caused both lots to be surveyed.    No
deed was made, and complainant remained in the same occu-
pation till the plantation had passed into the hands of Messrs.
Harris and Widemann, some time after which Mr. Wide-
mann went to Waihee to live, and take the management.
That Mr. Widemann consented to the arrangement for ex-
change of lands.

W. S. Maule *v*. The Waihee Sugar Company.

· At this point a synopsis of Mr. Widemann's testimony may be introduced. He says he was made aware of the arrangement made by Tallant ; that he acquiesced and ratified it, and promised to give the complainant a fee simple title to the land. Mr. Harris was his partner, and did not refuse to ratify the exchange, but put off signing a deed, and no deed was ever presented to Mr. Harris for signature. He said it was better to keep the complainant dependant than make him independent.

It further appears that Mr. Widemann next became sole owner of the plantation ; but through want of time or oversight, he sold it to the late Captain Makee without reservation as to the proposed exchange, and without notice. Mr. Widemann testifies that after the sale he spoke to Captain Makee, and asked him to remedy the matter, which he promised to do. Complainant testifies that when Mr. Widemann requested Captain Makee, as above, in complainant's presence, Captain Makee appointed the next day to go and view the land offered by complainant in exchange, and that they went, Mr. P. N. Makee and others being with them. They first looked at the lot of plantation land occupied by complainant, and afterwards at complainant's own. Captain Makee said my land was too small, that I ought to give a little more ; looked at a second piece of complainant's land near the other.

Mr. Parker Makee's testimony at this point is, that his father demanded three small pieces which he owned there, and that he should purchase and add to the exchange a little piece not his own, necessary to connect these and give access to the road.

It is agreed in testimony that surveys were made by the senior Rev. Mr. Alexander, at the instance of Captain Makee, which seem to have been delivered to Mr. Makee, but cannot now be produced ; and it is not made certain to the Court how much land was surveyed, or finally agreed upon, as the equivalent in exchange, if there was a final agreement.

W. S. Maule *v.* The Waihee Sugar Company.

The complainant's testimony is, that in replying to his request of Mr. Parker Makee for a deed he put him off, saying he had no time then.

As to the precise intention of Captain Makee or Mr. Parker Makee, who is president of the defendant company, there is conflicting evidence. Mr. Makee and Mr. King (who was then plantation book-keeper) testifying that in 1877 Mr. Widemann had a conversation with Mr. Makee respecting the exchange which Tallant had proposed to make with complainant, and that Mr. Widemann said it had never been ratified by Harris and Widemann, and advised to let the matter remain as it was without making a deed.

Mr. Widemann testifies that his advice was of the contrary tenor, in accordance with his efforts for years with Captain Makee and Mr. P. N. Makee to secure the title to complainant, which he had neglected to give him when he might have done so.

But whatever the conversation of these parties was in fact, Mr. Makee and the company, as at present constituted, have not given the deed.

Upon the acts of exchange the testimony for the complainant is, that he surrendered first one piece which Mr. Tallant proposed to take in exchange to the plantation-owners, and afterwards surrendered the second piece which Captain Makee called for, only taking off by consent the existing crop of taro.

The testimony for the defendant is that the several patches which plaintiff proposed in exchange were cultivated by the plaintiff in 1876 and perhaps later, and that Mr. Makee gave positive orders to the man in charge of the taro planting for the plantation not to use these patches, which are known as "Pila's Kuleanas."

In 1876 the complainant gave a mortgage on the "Pila Kuleanas," saying to Mr. Cecil Brown, who negotiated it, that he could not include the lot where his houses are built, as he had no title, but hoped to effect an exchange.

W. S. Maule *v.* The Waihee Sugar Company.

Regarding the complainant's title to the land he offers in exchange, he shows the royal patent to Pila, No. 5,525. He shows a conveyance of these premises from Kealoha, Sam and his wife, heirs of Pila (?) to S. M. Oana, who appears to be a brother of the complainant. He fails to prove to the Court a proper title vesting in himself. Mr. Makee testifies that he has asked plaintiff about his deeds; he has never shown them to him.

Plaintiff's improvements. As has been stated, he built a house under the license which is in proof, and subsequently to the arrangement with Mr. Tallant he put up more buildings on the land. It may be assumed that the plaintiff, to suit his purpose in extending his improvements, made the alteration in his license above noticed. In 1881 complainant testifies he raised his dwelling up one story, expending $4,000 in improvements, with no objection on the part of Mr. Makee. He built a picket fence, buying the posts of Mr. Makee. Mr. Makee requested him to make the line of the fence so as to leave a path "for us," and he therefore put it four feet within the line of the lot.

The defendants show a chattel mortgage by plaintiff for $800 of his dwelling-house and buildings on this lot, as well as of some cattle, to H. A. Widemann, assigned to Captain J. Makee, February, 1878.

Upon the above resume of the testimony, it appears that the complainant entered on the defendants' land under a written license to build thereon, and to remove his improvements without claim of fixtures. He was a tenant at will. When was this *status* of the parties changed?

It is to be observed in this place that the origin of this tenancy was the employment of complainant by the plantation, and the convenience of having him near his work, hence the use of the land without rent.

After building a dwelling, the plaintiff desired to make his tenure a fixed one, and at first proposes a lease or mutual

leases in the nature of an exchange for the term of fifty years; but, upon further consideration, he desired to obtain a fee simple title conveying his own land, or a piece of it, to the plantation. These negotiations were with Mr. Tallant, a manager of the plantation, or to make a binding contract affecting it.

The next dealings of the plaintiff are with Mr. Widemann, who was first partner with Mr. Harris, and subsequently sole owner. Mr. Widemann ratified " the agreement of Tallant," that is, he consented to convey to plaintiff the lot he was occupying, and take a conveyance of one piece of land owned or held by plaintiff. His partner, the late Chief Justice Harris, would not consent, upon the ground that they could deal better with their employee as tenant at will—" dependant rather than independant·" Mr. Widemann, afterwards becoming sole owner, neglected to perform his intention of executing a conveyance, and sold the estate to the late James Makee without notice of any rights, expectations, or equities of the plaintiff, although the assignment of the mortgage on the buildings should have suggested it if made concurrently with the sale. When Captain James Makee's attention is called to the position of the plaintiff, and he is informed that an exchange had been considered and promised by Mr. Widemann, he says he will see what is proposed to be given him in the exchange. All the testimony is to the effect that Captain Makee would not consent to take the one piece, Apana 3, which had been talked of. The parties were then in the position of making a new contract if they could come to agreement, and the plaintiff recognized this by acceding to new terms. Captain Makee was not liable for the specific performance of the engagements of his grantor to sell any part of the granted estate of which he had no previous notice, and which, if any subsisted, were oral; neither was he estopped from action of ejectment by anything he had suffered plaintiff to do, for plaintiff had done nothing on the faith of any promise of

Captain Makee, and held to him no better position than of tenant at will, as he had at first entered ; however, the conversations with Mr. Tallant and Mr. Widemann may have encouraged him to extend his improvements during nearly ten years' occupancy.

Has then the status of the parties been changed since the purchase by Captain Makee?

There is testimony that an exchange was considered. A survey was made at the instance of Captain Makee of plaintiff's lots and of the plantation piece, and delivered to Mr. Makee. These surveys are not to be found now. My inference from what is testified is that the lands surveyed as the plaintiff's included all that Captain Makee required. The survey of the plantation lot came to 2–100 acres more than had been made by the survey made when the exchange was previously discussed. No writing or memorandum as required by the Statute of Frauds was made. The plaintiff's counsel although the bill prays for a decree for specific performance, in argument does not claim this. The proposition could not be maintained in view of the Statute of Frauds. "The statute is not a mere rule of evidence, but a limitation of a judicial authority to afford a remedy. It requires that contracts for the sale of lands in order to be enforced by judicial proceedings shall be substantiated by some writing."

Glass *vs.* Halbert, 102 Mass., 24. This doctrine is uniform and settled. It remains then to be considered if there is an equitable estoppel of the defendant's plea of the Statute of Frauds.

The estoppel must depend on the claim that plaintiff was permitted to believe that the exchange of lands had been agreed to and that in consequence thereof he proceeded, with the knowledge of defendant to incur large expense in improvements which he would not have made on the basis of his former tenure, and which inferentially he cannot save if he leases the premises.

W. S. Maule v. The Waihee Sugar Company.

Proof of exchange cannot rest on any possession alleged to have been taken by the defendant of his kalo patches. For first, it is not made clear that defendant ever entered into possession of all the pieces which were finally demanded in case the exchange should be made, the complainant's act of mortgaging the lands tending to show his claim of possession as well as title, and the testimony of Mr. P. N. Makee, being positive that he ordered that no possession should be taken or held of the Pila patches. They appear to have been situated in a congeries of kalo patches belonging to Waihee Plantation, and it seems probable that Apana 3 which had been offered to Tallant and Widemann had been cropped on plantation account. Mr. Makee also testifies that the plaintiff had possession had taken crops and had placed a house on Apana 1.

This attitude of the parties towards these lots, the defendants' relinquishment and refusal to take possession, and the plaintiff's occupation of them, strongly advised the plaintiff that the defendants were holding off from the exchange which he desired. What reason had he to conclude that the exchange had been definitely agreed to ? His own testimony goes only to the effect of his asking Mr. Makee to have deeds prepared and executed, and of his being put off to a future time. He does not testify that at any time they came to definite agreement that they would exchange, and that the areas on both parts had been defined and agreed to and deeds promised.

Mr. Makee's testimony, is that the impression he derived from Mr. Widemann's conversation was advice to give no deeds, to continue in the former status. He is not asked, but he does not say that he ever intended or promised to convey to Maule. He says that he demanded an exhibition of the plaintiff's title, but it was never shown him and never made satisfactory. But he says, this was not the "only hitch" in the business. His father had demanded as a part of the

exchange a little connecting piece of land not belonging to the plaintiff, and the plaintiff had not procured and tendered it.

Meantime, the plaintiff had left the employment of the plantation, and the inducement for originally placing him in the immediate vicinity of the plantation works had ceased, and defendants held a chattel mortgage on his houses.

Now, to support an equitable estoppel on the ground that he had made large additional improvements on an oral agreement for the purchase of the land, it must be clear that—1, that there was one agreement ; 2, that the improvements were made in pursuance thereof. But in view of all the testimony, I cannot find that there was an agreement, or that the plaintiff had reason to believe that there was one. The improvements were an enlargement and repairs of his dwellings and buildings as placed there under his first license. At what point, if any, was it the duty of Mr. Makee to say to plaintiff he was expending too much money or rendering his buildings too large to be moved off? Certainly if Mr. Makee had made no agreement to sell it was not for him to determine how much the tenant at will should expend, or in what shape he should put his buildings. The plaintiff having had previous possession as a tenant his continuance cannot be taken as a part performance of agreement, and in this case, as the original license to enter was coupled with a license to build and take away his buildings, an enlargement of his buildings cannot be held *per se* as a part performance on a new agreement. "It is necessary that the Act should unequivocally refer to and result from the agreement, and be such, that the party would suffer an injury amounting to fraud by the refusal to execute that agreement." Sugden, Vend. and Purchases 1, 141.

The case presented by the plaintiff not offering a written memorandum of sale, and not supporting an oral agreement, and a part performance sufficient to estop the plea of the

Statute of Frauds, the bill must be dismissed with costs.

A. S. Hartwell for plaintiff.

F. M. Hatch for defendant.

Honolulu, February 19, 1883.