Syllabus.

# C. Q. YEE HOP, ET AL., *v.* YOUNG SAK CHO, ET AL.

## No. 1241.

### APPEAL FROM CIRCUIT JUDGE FIRST CIRCUIT. HON. J. J. BANKS, JUDGE.

ARGUED APRIL 30, 1920.                    DECIDED MAY 26, 1920.

### COKE, C. J., KEMP AND EDINGS, JJ.

EQUITY—*parol leases—statute of frauds.*

Although a parol agreement to grant a lease may be void under the statute of frauds it will still be enforced in equity where there has been a substantial part performance of it though on the part of the plaintiff only if possession has been delivered and the tenant has expended money in buildings or improving the property in pursuance of the agreement.

SAME—*same—same.*

Where the lessees holding under oral leases have paid substantial premiums for the leases enjoyed by them and have pursuant to the provisions of the leases and with the knowledge and consent of the owners expended a large amount of money in improving the demised premises equity will interfere to prevent the owners from ousting the lessees in the manner prescribed in section 2754 R. L. 1915 and to prevent them from impleading the statute of frauds to invalidate the leases under which the lessees possess the premises.

LANDLORD AND TENANT—*leases—mutuality.*

The ancient rule to the effect that a lease which puts it in the power of the lessee to terminate the lease at will is void for want of mutuality has long since been discarded and has no place in the present day analogies of the law of tenancies.

SAME—*right of lessees under oral lease as against subsequent purchaser—notice.*

The rule is that where a party purchases or leases real estate in the possession of another not his vendor or lessor he is chargeable with knowledge of all the rights of the party in possession and the law imposes upon him the duty to make reason-

able· inquiry as to the rights of persons in possession and if he fail to do so he cannot be deemed to be a purchaser in good faith for value and the provisions of section 3118 R. L. 1915 will not protect him.

OPINION OF THE COURT BY COKE, C. J.
(Edings, J., dissenting.)

This is a suit in equity instituted by the petitioners praying for an injunction to restrain the respondents from violating the terms of the leases under which petitioners claim to be occupying certain fish and vegetable stalls in what is known as the Oahu market situated at the corner of King and Kekaulike streets in the city of Honolulu. It is alleged in the bill of petitioners that Y. Anin, who was the owner of the premises, leased the same to one Young Tuck for the term of 50 years from October 1, 1902; that on June 22 and June 27, 1904, the said Young Tuck orally leased certain of the stalls in the market building to the predecessors in interest of certain of the petitioners at a fixed rate of $15 per month for fish stalls and $14 per month for vegetable stalls, the allegations of the bill in this behalf reading as follows: "That the said Young Tuck orally leased certain of the said stalls, or tables, to the petitioner Wong Pun (Pang) and to the predecessors in interest of the other petitioners at a fixed rental at the rate of $15.00 a month for a meat or fish table, and $14.00 a month for a vegetable or grocery stall, it being then agreed between the said Young Tuck and his tenants that they were to pay the rental monthly in advance, without demand; that the landlord was to pay the ground and general building taxes, but the tenants the license fees; that the tenants were not to assign nor sublet without the permission of the landlord; that the tenants were to keep the stalls and appurtenances clean, in good order and condition, and were not to make alterations; that the

tenants were not to erect any buildings or structures of any kind without the consent of the landlord; that the tenants were to keep the premises in sanitary condition and were to obey and observe all rules and regulations of the board of health and of the police and the law generally; that, on nonpayment of rent when due, or on the breach of any condition or agreement on the part of the tenant to be observed or performed, then the landlord or his agents might enter the premises, forcibly, if necessary, and terminate the tenancy and remove the tenant and his effects forcibly, if necessary, without being deemed guilty of trespass and without any liability therefor; that the tenants were not to commit nor suffer any nuisance or source of filth or accumulation of garbage or refuse of any kind; that the tenants were not to use the premises for any other purpose than that of a market; and that, if the tenants, their heirs, executors, administrators and permitted assigns, observed and performed the conditions and agreements as stipulated and paid the fixed rentals, they might exercise the option, at the end of each month, of renewing the leaseholds, they having the right to repeat these renewals indefinitely." The petition also avers that under the direction of Young Tuck the right to occupy some twenty odd stalls was sold at auction to the highest bidder for the premiums thus paid, ranging from $27 to $300 per stall, a total premium of $4384.50 being paid by the tenants at that time to Young Tuck; that certain other of the stalls were subsequently leased to petitioners or their predecessors in interest without auction but upon the same terms and conditions as those which were auctioned. It is further alleged that pursuant to the terms of the oral agreements the tenants entered into possession of said stalls and that they and their permitted assigns have held the same continuously to the present date; that in

the year 1912 pursuant to the terms of the oral leases and with the knowledge and consent of the respondents the lessees expended over $11,000 in improvements in and to the market building and that the lessees have at all times paid the stipulated rentals of $15 a month for meat or fish stalls and $14 for vegetable or grocery stalls. It is further alleged that the petitioners herein are the successors or permitted assigns of the original lessees of the various stalls as hereinabove described. It is further alleged that in October, 1904, Young Tuck assigned his leasehold to the Oahu Market Company, Limited, and that thereafter up to and including May, 1919, the lessees have attorned to the company paying it the rent at the rate hereinabove specified, which payments have been accepted as correct by the company; that on July 1, 1919, the respondent the Oahu Market Company, Limited, then being the owner in fee of the premises, leased the premises to the respondents Young Sak Cho and Charles F. Chillingworth for a term of ten years from that date; that on July 31, 1919, said respondents Young Sak Cho and Chillingworth notified petitioners that the rental for the stalls occupied by them would be $30 per month each beginning September 1, 1919, and further notified them that if these increased rentals were not paid by September 1, 1919, proceedings would be instituted to oust them from the premises; that thereafter Young Sak Cho and Chillingworth did begin an action for summary possession against one of the petitioners in the district court of Honolulu and a judgment being rendered in favor of said respondents a writ of execution was issued thereon, and other attempts were being made to oust the petitioners of the possession of the stalls held by them under their respective leases. It is further alleged that the petitioners have performed all the obligations resting upon them by virtue of the

terms of their leases and now offer to further observe and perform the same; that petitioners have no adequate remedy at law and all of their claims and rights arise out of the same events and transactions and depend upon the same questions of law and similar matters of fact. The bill is very lengthy and we have merely attempted to summarize the more salient features thereof.

To the bill of complaint the respondents interposed demurrers. From the decree of the court below overruling their demurrers the respondents have perfected an appeal to this court. The demurrers present a number of grounds therefor, the following of which we will discuss in this opinion: (1) That the tenancies in said alleged amended petition being by parol are by statute (Sec. 2754 R. L. 1915) determinable by a notice to quit of at least ten days; (2) that the alleged oral leasehold agreements set out and relied upon by the petitioners are within the fourth and fifth clauses of the statute of frauds (Sec. 2659 R. L. 1915) and are void for not being in writing; (3) that such alleged oral agreements are void for want of mutuality and (4) that it nowhere appears from the allegations of said amended petition that these respondents or any or either of them had actual or any notice of said alleged oral agreements of leasehold.

The first and second grounds of demurrer above outlined are closely allied and out of regard for brevity will be grouped and disposed of as one subject. The statutes referred to and which are the basis of paragraphs 1 and 2 of the demurrer above quoted read as follows:

"Sec. 2754. * * * Whenever any lessee or tenant of any lands or tenements, or any person holding under such lessee or tenant, shall hold possession of such lands or tenements without right, after the determination of such tenancy, either by efflux of time or by reason of any

forfeiture, under the conditions or covenants in any such lease; or, if a tenant by parol, by a notice to quit of at least ten days, the person entitled to such premises may be restored to the possession thereof in manner hereinafter provided."

"Sec. 2659. * * * No action shall be brought and maintained in any of the following cases: * * *

"Fourth. Upon any contract for the sale of lands, tenements or hereditaments, or of any interest in or concerning them;

"Fifth. Upon any agreement that is not to be performed within one year from the making thereof;

"Unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and be signed by the party to be charged therewith or by some other person thereunto by him lawfully authorized."

It is contended by respondents that the parol leases set forth in the petition are at most mere tenancies from month to month determinable by the lessor upon notice of at least ten days as provided for in section 2754 R. L. Respondents further argue that the oral leases are void under the fourth and fifth clauses of the statute of frauds above quoted; that in the face of those provisions of law no interest in land whatever, not even a leasehold, can be created by parol in the Territory of Hawaii which will be binding upon the parties. We think it cannot be doubted that the oral leases mentioned in the petition must be taken as conveying an interest in land and therefore come within the statute of frauds unless for some special reason which the law recognizes as sufficient they are relieved from the operation of that statute. We furthermore conclude that because the leases created tenancies solely by parol they are governed by the provisions of section 2754 unless for a like reason they have been removed beyond the pale of that statute. But it is a well recognized principle of equity jurisprudence that

courts of chancery will very frequently intervene to enforce a verbal contract notwithstanding the statute of frauds, and in a recent opinion this court quoted with approval the rule announced in *Rose* v. *Parker,* 4 Haw. 593, to the effect that courts of equity will interfere to prevent the bar of the statute of limitations where equity and justice call for such interference. See *Houghtailing* v. *De La Nux, ante* p. 438. In *Rose* v. *Parker, supra,* it is further held that "Equity will intervene to enforce a verbal contract for the sale of land, notwithstanding the statute of frauds, where one party has done certain acts in part execution and upon the faith of the contract with the knowledge and consent of the other, if the contract is so far executed that for the latter to repudiate it would amount to a fraud upon the other." The court in that case further announced the rule to be that the mere payment for land accompanied by possession is part performance. Again the supreme court of Hawaii in *Maule* v. *Waihee Sug. Co.,* 4 Haw. 637, held that "a parol agreement for the exchange of lands will be compelled to be executed if it has been carried into effect with the knowledge and consent of the other contracting party so that it would be against equity to repudiate it." See also *Vierra* v. *Ropert,* 10 Haw. 301. In *Neale* v. *Neales,* 76 U. S. 1, the court says that "Equity protects a parol gift of land equally with a parol agreement to sell it, if accompanied by possession, and the donee, induced by the promise to give it, has made valuable improvements on the property. And this is particularly true where the donor stipulates that the expenditure shall be made, and by doing this makes it the consideration or condition of the gift." Again the supreme court of the United States in *Brown* v. *Sutton,* 129 U. S. 238, in a suit in equity to compel the specific performance of a parol contract to convey real estate, declares the rule

to be that where there is a sufficient showing of a part performance of the parol contract to take it out of the operation of the statute of frauds equity will enforce specific performance. In reviewing this case the court makes mention of the fact that while the rule respecting the necessity for a written agreement in regard to the title to real property is almost universally understood among all classes of people, however unlearned in the law, it is not very well known that there is an exception to it in the case of a promise, not in writing, but so far performed as to take it out of the statute of frauds. And again, in *Townsend* v. *Vanderwerker,* 160 U. S. 171, the court in dealing with the effect of the statute of frauds in the absence of a contract in writing lays down the rule to be that a mere payment of the consideration in money is insufficient to remove the bar of the statute but there is no doubt that such payment accompanied by an entry into possession under the contract is such a part performance as will support the bill.

Judge Story has adopted this principle in his work on Equity Jurisprudence, Vol. 1, Sec. 759, in the following language: "Courts of equity will enforce a specific performance of a contract within the statute (statute of frauds) where the parol agreement has been partly carried into execution. The distinct ground upon which courts of equity interfere in cases of this sort is, that otherwise one party would be able to practice a fraud upon the other and it could never be the intention of the statute to enable any party to commit such a fraud with impunity. Indeed, fraud in all cases constitutes an answer to the most solemn acts and conveyances and the objects of the statute are promoted instead of being obstructed by such a jurisdiction for discovery and relief. And where one party has executed his part of the agreement, in the confidence that the other would do the

same, it is obvious that if the latter should refuse it would be a fraud upon the other to suffer this refusal to work to his prejudice." See also Browne on the Statute of Frauds, 4 ed., Sec. 448, where the same rule is announced and elaborated upon. Sections 2754 and 2659 R. L. 1915 stand upon the same plane. The one is no more sacred than the other and the provisions of neither is immune from the operation of these salutary principles of equity jurisprudence hereinabove set forth. Equity will intervene to prevent the use of either of said statutes where the one invoking their aid is attempting to perpetrate a fraud upon another.

In the case at bar the petitioners or their predecessors in interest paid substantial sums by way of premiums for the leases which they now enjoy and thereafter pursuant to the provisions of their leases and with the knowledge and consent of the respondents expended a large amount of money in improving the demised premises and it would amount to a fraud upon them to now permit the owners to oust them in the manner specified in section 2754 or to permit them to implead the statute of frauds to invalidate the leases under which the petitioners possess the premises. And for these reasons we do not deem it material whether by the terms of the oral agreements the lessees were granted the right of options for leases which they might avail themselves of at the end of each month and from month to month up to the date of the expiration of the lease held by Young Tuck or whether as contended by the respondents the oral agreements granted a present demise for the whole period of Young Tuck's lease, for whichever view may be adopted equity will interfere to prevent defeasance by the lessor. As said by Lord Cottenham: "Courts of equity exercise their jurisdiction in decreeing specific performance of verbal agreements where there has been

part performance for the purpose of preventing the great injustice which would arise from permitting a party to escape from the engagements he has entered into, upon the ground of the statute of frauds, after the other party to the contract has, upon the faith of such engagements, expended his money or otherwise acted in execution of the agreement. Under such circumstances the court will struggle to prevent such injustice from being effected" (*Mundy* v. *Jolliffe*, 5 My. and Cr. 177). And under the facts presented in the petition equity ought to interfere to prevent the respondents from repudiating their agreements with the aid of the statute of frauds, and this should be done even though the terms of the agreements conflict with the provisions of that statute. "Although a parol agreement to grant a lease may be void under the statute (statute of frauds) it will still be enforced in equity where there has been a substantial part performance of it though on the part of the plaintiff only. * * * If possession has been delivered under such an agreement it will be considered as a part performance, especially if the tenant has expended money in buildings or improving the property in pursuance of it" (1 Taylor, Landlord & Tenant, 8 ed. Sec. 32). The opinion of this court in *Yip Lan* v. *Ahulii*, 23 Haw. 307, at p. 311, sustains the validity of an option for a lease and holds that if the option is exercised within a reasonable time both parties are bound by it and the lessee becomes entitled to have the lease renewed on the terms agreed upon and that equity will compel specific performance at the suit of the lessee. An English case which very clearly illustrates the principles involved is *Sutherland* v. *Briggs,* 1 Hare 26, 66 Eng. Repr. 936.

The next ground of demurrer urged by respondents is that the oral leases referred to in the petition are void for want of mutuality, that is to say, that because under

the terms of the leases the right to terminate them at will is reserved solely to the lessees the leases are either wholly void or at best mere tenancies at will or from month to month. The ancient rule to the effect that a lease which puts it in the power of the lessee to terminate the lease at will is void for want of mutuality has long since been discarded and has no place in present day analogies of the law of tenancies. The identical question was presented to this court in *Ho Tong* v. *Hope*, 23 Haw. 603, where this court in passing upon the question said: "Counsel for defendant urges that the contract of lease is void for want of mutuality for the reason that the lease reserves a right of cancellation to the lessors without a corresponding right reserved to the lessee. We can see no merit in this contention." See also *Lewis* v. *Effinger*, 30 Pa. 281; *Doe* v. *Dixon*, 9 East. 15; *Cook* v. *Bisbee*, 18 Pick. 527; *Folts* v. *Huntley*, 7 Wend. 210. And speaking generally of the rule of mutuality as applied to proceedings in equity this court in *Lum Wai* v. *Hong Hoon*, 24 Haw. 986, at p. 705, adopted what we deem to be the modern and reasonable rule in the following language: "The mutuality required is that which is necessary for creating a contract enforcible on both sides in some manner, but not necessarily enforcible on both sides by specific performance."

The final point is made by the respondents that the petition is deficient and demurrable because it is not alleged therein that the respondents Young Sak Cho and Charles F. Chillingworth had actual notice of the oral leasehold agreements under which petitioners are alleged to be occupying the premises. In support of this position the respondents rely upon the provisions of section 3118 R. L. 1915, which reads as follows: "All deeds, leases for a term of more than one year, or other conveyances of real estate within this Territory, shall be recorded in

the office of the registrar of conveyances, and every such conveyance not so recorded shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, not having actual notice of such conveyance, of the same real estate, or any portion thereof, whose conveyance shall be first duly recorded." It is argued that under this statute and the allegations of the petition the respondents Young Sak Cho and Charles F. Chillingworth occupy the status of innocent purchasers for value without notice. The general rule is that where a party purchases or leases real estate in the possession of another not his vendor or lessor he is chargeable with knowledge of all the rights of the party in possession. (29 Cyc. 1113; *Tuttle* v. *Jackson,* 6 Wend. 213.) In *Sutherland* v. *Briggs, supra,* the court says: "The plaintiff being in the occupation of the meadow in question at the time of the defendant's purchase he must be affected with notice of the interest, whatever it may be, which the plaintiff had in it." So in the present case, at the time the respondents Young Sak Cho and Charles F. Chillingworth acquired their lease of the premises from the Oahu Market Company, Limited, the petitioners herein were in possession of the several stalls under their oral agreements of leasehold and there was nothing in this possession which was not entirely consistent with what appeared of record. All doubt as to what the law on this subject is in this Territory has been set at rest in the opinion of this court in *Achi* v. *Kauwa,* 5 Haw. 298, where the court says: "In equity and at common law without reference to special statutes, and, it seems to us, upon reason, good faith requires a purchaser of land to take his title subject to the claims of parties in possession when he buys. Under our statute, if the party in open possession is unable to show actual notice of his unregistered deed to a subsequent purchaser, his posses-

sion is constructive notice to such purchaser of all his rights, and he cannot be disturbed therein." The general rule as written in the syllabus to that opinion is that "The actual possession of land by a party under an unrecorded deed is constructive notice to a subsequent purchaser of the land whose deed is recorded."

Applying these rules to the facts as alleged in the petition herein the duty is not upon the petitioners to allege or to prove that the respondents Young Sak Cho and Charles F. Chillingworth had actual notice of the rights of the petitioners in the premises in question because the petitioners being in open possession the law imposes upon respondents the duty to make reasonable inquiry as to the rights of the persons in possession and if they failed to do so they cannot be deemed to be purchasers in good faith for value and the provisions of section 3118 would not protect them. If as a matter of fact they are purchasers in good faith for value this would be a matter for them to set up by way of defense.

The fact must not be overlooked that the cause is now before us on the merits of respondents' demurrer and that all facts properly pleaded are to be taken as admitted. Considering the cause from this standpoint we are convinced that the petition divulges sufficient facts to call for equitable relief. To adopt the view contended for by respondents would be to permit them not only to repudiate a solemn agreement but at the same time to profit by the repudiation. If the leases may now be terminated by the respondents they might with equal right have been terminated at the expiration of forty-five days after they were first agreed upon notwithstanding the fact that the lessees were required to pay a premium of $4384.50 for the right to enjoy them. And they might have been terminated in a like period after the lessees pursuant to the terms of the leases had expended upwards of $11,000

in improving the property.   The petitioners have kept and performed all of the covenants on their part to be observed and have in every respect acted with the utmost of good faith, the jural equities of the case as divulged by the record are all with them and to now permit them to be summarily dispossessed of the premises would amount to a fraud upon their rights.   It was to prevent the rigor and injustice of just such an act as is contemplated by the respondents that courts of equity were created.

We have examined all the grounds of demurrer urged by respondents and find them without merit.

The decree appealed from is affirmed.

*W. B. Lymer* (*Perry & Matthewman* and *W. J. Robinson* with him on the brief) for petitioners.

*E. M. Watson* (*Watson & Clemons* on the brief) for respondents.

### DISSENTING OPINION OF EDINGS, J.

I am unable to concur in the foregoing opinion and therefore respectfully dissent.