## FRANK F. DE LUZ *v.* JOSE SILVA RAMOS.

### No. 1960.

Argued December 22, 1930.      Decided April 4, 1931.

Perry, C. J., Banks and Parsons, JJ.

OPINION OF THE COURT BY PARSONS, J.

This case is before us upon appeal of the respondent from a decree of the circuit judge awarding complainant specific performance of an oral agreement for the subletting of certain land in Kalopa, Hamakua, Hawaii, forming part of the premises covered by general lease No. 1903 from the commissioner of public lands to respondent. The amended bill of complaint alleges in part and in effect that the land thus agreed to be sublet by the respondent to the complainant comprises 300 acres therein more particularly described and lying at the makai end of the strip thus leased to the respondent by the government. The bill further alleges that the consideration for respondent's said promises is the promise of complainant to pay respondent $1.25 per acre per annum rental in semi-annual installments in advance and taxes upon said 300 acre tract, to erect a portion of the fence between said 300 acre tract and the remaining portion of respondent's land and to release said respondent from his promise to sublease to the complainant 500 acres of the same tract, for which the

complainant has paid rental for the term of one year. The foregoing oral agreement is alleged to have been made on or about April 28, 1929. The amended bill of complaint further alleges that by virtue of and in pursuance of said agreement, on or about July 30, 1929, the respondent delivered to the complainant exclusive possession of the 140 acres of land (more particularly describing the same) at the makai end of said tract; "that the said complainant and respondent are in joint possession of the remainder of the said 300 acre tract; but the said respondent deceitfully and fraudulently stated to the complainant that the plot last above described, of which he had exclusive possession, contained the full 300 acres; and has utterly failed and refused, and still refuses, to deliver to the complainant exclusive possession of the entire 300 acres, in accordance with his said promises and undertakings, or to sublease the said 300 acres of land to the complainant according to the terms of their agreement first above set forth." It is further alleged that the complainant is ready and willing to perform his part of said agreement; that he has already paid and the respondent has accepted a first installment of rent thereunder in the sum of $187.50 and taxes in the sum of $30; that in reliance upon said promise of respondent complainant has purchased approximately ninety head of cattle which will now have to be sold at a loss if execution of said sublease is not decreed. Complainant prayed for specific performance and compensation for injury alleged to have been sustained as a direct result of the respondent's nonperformance; and for other and further equitable relief.

Respondent's sworn answer admits ownership in himself of general lease No. 1903, denies any promise by himself to sublet to complainant 300 acres of said land; denies that complainant paid him or that he accepted any rents

for said 300 acres; and as a further defense respondent alleges "that on or about the 28th day of April, 1929, the respondent agreed to sublet to the complainant for the remaining portion of the term of said respondent's lease, at the annual rental of $1.25 per acre, the portion of said land described on page 3 of said amended bill of complaint, the exclusive possession of which was taken by complainant on or about the 30th day of July, 1929; and the respondent denies that he deceitfully or fraudulently stated to the complainant or in any other manner represented to the complainant that the said land, the possession of which was so taken by complainant, contained 300 acres or any other definite or approximate area."

The facts as found by the trial judge were in part as follows: "It appears from the evidence that on March 15, 1928, the respondent was the successful bidder at public auction for certain pasture land situate in the Hamakua district, County of Hawaii. Pursuant to this bid general lease No. 1903 was entered into by the respondent as lessee and by the commissioner of public lands on behalf of the Territory as lessor. The lease is for the term of 21 years from July, 1928, at an annual rental of $7,400.00, payable semi-annually in advance on July 1st and January 1st and covers an area of 6,990 acres, more or less. On March 15, 1928, the date of the auction, the respondent entered into some arrangements with J. J. Nobriga, Frank Teixeira and complainant whereby they were to take as sub-lessees certain portions of the land for the full term and subject to the terms of the general lease. Nobriga and Teixeira each took 1000 acres and each made a payment of $530.00; whether complainant was to take 1000 or 500 acres is not clear, however complainant did pay respondent on said date the sum of $530.00; this payment was equivalent to a semi-annual payment on

1000 acres or an annual payment on 500 acres. After this agreement between the four parties each kept a certain number of cattle on the land and at the time of the trial some of complainant's cattle were on the land, presumably upon the portion held by the respondent, for the statement was made by counsel that Nobriga and Teixeira had each received a sublease to 1000 acres. On or about April 28, 1929, while respondent was branding cattle on the premises, some conversation was had between the parties to this suit about running the cattle together and the difficulty of selecting and branding and complainant wanted to have his land, or as he claims 500 acres, set off to him. As a result of this conversation complainant agreed that he would take in lieu of 500 acres of the upper land, 300 acres of the lower land at a rental of $1.25 per acre, pay the taxes and keep up or pay for certain fences. This rental agreed to be paid for the lower land was 19 cents higher per acre than that called for in the general lease. At this April conversation it was agreed by the parties that at a later date they would go on the lower land and determine where the fence should be placed. In about two weeks they went upon the land and respondent pointed out and marked the line for the fence. This boundary line fence was established just below certain water holes or basins which were considered of great importance by the respondent. The land below this so established boundary line was rolling and could not all be seen from said line, and it was not known by either party whether there were more or less than 300 acres, and to cover this situation it was agreed that a survey should be made and the rent increased or decreased proportionately. The complainant built the boundary fence on the line pointed out by respondent, and after the construction of the fence, and sometime in July, 1929, had the land surveyed and found

that the area below the division line fence contained only 140 acres. Before the survey of the land was made complainant had on July 1, 1929, paid to respondent $187.50 by check, on which was written 'for a lease of three hundred acres;' one check for $105.20, on which was written 'for fence' and a check for $30.00, on which was written 'for tax.' These three checks were cashed by respondent and he knew through his wife and another of the above quoted endorsements before cashing them, although the respondent does not know how to read or write. Upon learning that the land fenced off contained only 140 acres, complainant went to respondent, informed him of the fact, and inquired if he was going to give him 300 acres. The respondent answered that the surveyor was wrong, drunk, or crazy, and that he would not give complainant any additional land."

"I think," said the trial judge, "the evidence is susceptible of only one interpretation and that is that both parties honestly wanted to set off 300 acres at the lower level and that when the line fence boundary was established each honestly believed that there were close to 300 acres in the area below the boundary line fence; that whether there were more or less than 300 acres in the area below the boundary line established, whatever area there was was to be taken by the complainant as his entire interest in the general lease. The respondent never agreed to nor intended to give any land above the boundary line, no matter what the survey showed, but did agree to adjust the rent to the area found by the survey. The complainant testified that in the conversation some Portuguese word was used by respondent (what the word was is not shown), which complainant understood to mean that a small difference in area of from 6 to 8 acres would be adjusted, but that it did not contemplate adjustment of a difference of

half or more in the area, but this testimony of complainant certainly tends to show that he knew he was getting only the land below the division line fence."

The trial judge found that sufficient demand for performance had been made prior to the commencement of suit. In conformity with the decision above quoted in part it was decreed "that the respondent execute and deliver to the complainant a good and sufficient lease to that portion of land held by the respondent under general lease No. 1903, and more particularly described as being all of that land set forth in exhibit D, Equity No. 199, containing an area of about one hundred forty acres" (describing same) ; "that the terms of said lease be for the same period as general lease No. 1903; that the lease contain the usual covenants and be subject to all covenants, conditions and agreements of said general lease; rental to be $1.25 per acre per annum, payable semi-annually in advance on July 1st and January 1st of each year; the lessee to pay all taxes assessed on the above leased area."

Notwithstanding the fact that said decree directed that a lease be executed by respondent to complainant of 140 acres and not of 300 acres of land as prayed in the complaint, and notwithstanding the fact that the judge found against the complainant on the latter's claim of right to compensation for loss occasioned by respondent's refusal to perform, no appeal was noted by complainant. The case is before us upon the appeal of the respondent alone. The issues are materially narrowed by the admissions of respondent's sworn answer hereinabove referred to, namely, that "on or about the 28th day of April, 1929, the respondent agreed to sublet to the complainant for the remaining portion of the term of said respondent's lease, at the annual rental of $1.25 per acre, the portion of said land described on page 3 of said amended bill of complaint, the

exclusive possession of which was taken by complainant on or about the 30th day of July, 1929." This, with the evidence in the case hereinabove recited, is sufficient to sustain the trial judge's finding of an agreement to sublet the land described in the decree for the term and at the rental therein named.

Respondent urges (a) that the evidence fails to disclose any agreement for a written lease; (b) that the oral agreement is too indefinite to authorize specific performance; and (c) that the part performance is insufficient to take the oral agreement out of the statute of frauds.

1. As to the respondent's first point above set forth, namely, that the evidence fails to disclose any agreement for a written lease, it will be noted from what is above recited that both the evidence and the admissions of respondent disclose an agreement to "sublet." This should be interpreted to mean a valid and effective subletting in the circumstances of the case. One of Webster's definitions of the verb "sublet" is "to lease, as when a lessee leases to another person." Until part performance no other kind of subletting would have been enforceable under the statute of frauds and no other kind, if, as in the instant case, for a term of more than one year, could have afforded the lessee adequate protection or possibility of such protection against the claim, if any, under a recorded instrument, of a subsequent purchaser in good faith and for a valuable consideration not having actual notice of said prior conveyance. Subletting by a written instrument alone could satisfy the foregoing requirements.

2. Respondent's second point, as above set forth, is that the oral agreement is too indefinite to authorize specific performance. The lease which the trial judge decreed should be executed contains, as set forth in respondent's brief, provisions covering the following items: (a)

description of property, (b) commencement of term, (c) duration of term, (d) rental, (e) payment of tax assessments, (f) maintenance of fencing if required by Territory, condition of fencing and indemnity to lessor for damages for neglect, (g) provisions against waste and removal of trees, (h) surrender on termination with all improvements, (i) provision against assignment without the consent of commissioner of public lands, (j) lease subject to general lease No. 1903, (k) abatement from rent on withdrawal of land from operation of lease, (l) increase of rental if lessor's rent increased by reason of use of land for cultivation purposes and apportionment of expense attending adjustment of such increase, (m) provision for forfeiture on default for thirty days, (n) lease subject to approval of commissioner of public lands. Respondent submits that "there is no evidence whatsoever to indicate that the parties ever agreed upon any of these terms, excepting the amount of the rent, and that there is nothing in the evidence to show that any of these terms or that this form of lease was contemplated."

Respondent's admission hereinabove referred to supplies items (a), (b), (c) and (d) of the above schedule, and the other items are sufficiently supplied by general lease No. 1903 introduced in evidence as complainant's exhibit "E," together with the uncontradicted testimony of respondent's brother, Manuel Ramos, as to the conversation in which the witness, the respondent, the complainant, Frank Teixeira and Joe Nobriga took part on March 15, 1928, the date of the execution of said government lease, in which conversation with reference to the areas then preliminarily agreed to be apportioned the respondent said, "you fellows take the same way I am taking." Exhibit "E" shows that the respondent was taking from the government under all the provisions except as to parties,

area, rental and beginning of term above enumerated. This, in connection with other evidence in the case above recited, was sufficient to support the trial judge's finding as to the terms of the lease agreed upon.

3. Respondent's third point above set forth is that the part performance is insufficient to take the oral agreement out of the statute of frauds. The portion of the statute of frauds referred to (R. L. 1925, Sec. 2665) is section 4 which provides that "no action shall be brought and maintained * * * upon any contract for the sale of lands, tenements or hereditaments or of any interest in or concerning them * * * unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and be signed by the party to be charged therewith, or by some person thereunto by him in writing lawfully authorized." This court has held in *Dimond* v. *Macfarlane,* 11 Haw. 181, that "a contract for a lease or sublease of lands is 'a contract for the sale' of an 'interest in or concerning lands' within the meaning of the statute of frauds." In *Rose* v. *Parker,* 4 Haw. 593, later approved in *Yee Hop* v. *Young Sak Cho,* 25 Haw. 494, 500, this court has held that "equity will intervene to enforce a verbal contract for the sale of land, notwithstanding the statute of frauds, where one party has done certain acts in part execution and upon the faith of the contract with the knowledge and consent of the other, if the contract is so far executed that for the latter to repudiate it would amount to a fraud upon the other. * * * Payment for land accompanied by possession is part performance." In this connection in the instant case the undisputed evidence shows that, in reliance upon the oral agreement for a subletting as above set forth: (a) the complainant, with the respondent's knowledge and consent, entered into exclusive posses-

·sion of the land described in the decree after the boundaries had been pointed out to him by the respondent; (b) fences were constructed upon said land at complainant's expense; (c) upon delivery of possession of said land complainant made to respondent, and respondent accepted, a partial payment of rents and taxes; and (d) the complainant released his rights (which we are not required and do not attempt to define) of occupancy of a larger tract. Under the above quoted rule announced in *Rose* v. *Parker, supra,* and approved in *Yee Hop* v. *Young Sak Cho, supra,* the acts of part performance above enumerated are more than sufficient to remove the case from the operation of the above quoted provisions of the statute of frauds.

For the reasons above set forth the decree appealed from is affirmed.

*C. W. Carlsmith* (*C. S. Carlsmith* with him on the brief) for complainant.

*J. W. Russell* (*T. E. M. Osorio* with him on the brief) for respondent.