C. Q. YEE HOP & COMPANY, LIMITED, AN HAWAII-
AN CORPORATION, ET AL., *v.* YOUNG SAK
CHO AND CHARLES F. CHILLINGWORTH, CO-
PARTNERS DOING BUSINESS AS THE HONO-
LULU MARKET; AND THE OAHU MARKET
COMPANY, LIMITED, A CORPORATION.

No. 1347.

CROSS-APPEALS FROM CIRCUIT JUDGE FIRST CIRCUIT.
HON. C. S. FRANKLIN, JUDGE.

ARGUED FEBRUARY 23, 24, 1923.        DECIDED JULY 30, 1923.

PETERS, C. J., LINDSAY, J., AND CIRCUIT JUDGE O'BRIEN
IN PLACE OF PERRY, J., DISQUALIFIED.

EQUITY—*grounds of jurisdiction—to prevent a multiplicity of suits.*
    Equity is without jurisdiction upon the joint bill of a number
of persons against the same party or parties to hear and deter-
mine rights purely legal all of which do not arise from some
common cause nor involve similar facts, but on the contrary arise
from separate causes, involve different disputed facts and require
separate findings of fact as to each complainant.

OPINION OF THE COURT BY PETERS, C. J.

This is a suit in equity brought jointly by all the
several owners of prior separate leases of parts or sub-
divisions of, or what are termed and referred to in the
bill as "stalls" in the Oahu Market situate on the north-
west corner of South King and Kekaulike streets, Hono-
lulu, to restrain the owner in fee of the whole market
premises and its subsequent lessees thereof, with notice
of said prior leases, from attempting, so long and while

the respective owners of said prior leases and their respective heirs, executors, administrators and assigns "observe and perform the conditions and agreements as stipulated and pay the fixed rentals" and until October 1, 1952, the alleged date of expiration of said prior leases, from raising the monthly rentals of the several stalls subject to said prior leases beyond that respectively reserved thereby and from instituting or prosecuting any legal proceedings to recover from the complainants, their heirs, executors, administrators, successors and assigns monthly rentals in excess thereof, or instituting or prosecuting against them any legal proceedings to obtain possession of the respective stalls subject to said prior leases.

From the allegations of the "revised second amended petition" which, for purposes of brevity shall be referred to herein as complainants' "bill", it appears that during the months of June and July, 1904, one Young Tuck, the then lessee of the whole market premises for the term of 50 years from October 1, 1902, orally leased singly or in groups as desired, for the same terms of years, subject to similar covenants and conditions and at a uniform rental, according to the use to which the same might be devoted, 40 sections or subdivisions of the market to be used as retail meat, fish, vegetable or grocery stalls, that is to say, on June 22 and 27, 1904, at public auction, 35 stalls to the highest bidders of premiums therefor, and variously during July following privately, without auction, and with but one exception without premium, 5 stalls, resulting in 26 separate leases of stalls to as many separate individuals of whom complainants with the exception of Wong Pun, severally and not jointly are the immediate or ultimate assignees.  Wong Pun is an original lessee.

The exact number of leases granted upon each of the occasions when the method of selecting tenants by public auction was employed does not appear.  By the final

decree hereinafter referred to, the bill was dismissed as to all leases granted at the auction sale of June 27th and as to three granted in July following, in all five leases, so that it would appear that twenty-one leases were granted at the first auction sale of June 22. Nor does the bill allege that the second auction sale was a continuation of the first.

It further appears by the bill that in the year 1914, at the time the permanent improvements were made by the complainants hereinafter referred to, but at what exact date or dates the bill is silent, a readjustment in the extent of the respective areas leased by seven of these prior leases was had between the respective owners of said leases and the respondent Oahu Market Company, Limited, as a result of which portions of what had previously been passageways in the market, due no doubt to their area, designated in the bill as "half-stalls", were absorbed by the lessees and occupants of adjoining stalls and the leases of the latter modified to the extent of such additional area and a proportionate increase in rent based upon the uniform rental rate previously employed in such leases for "whole" stalls. There were seven such "half-stalls."

Complainants' theory of the terms demised by these prior leases is thus alleged in the bill: "if the tenants, their heirs, executors, administrators and assigns, observed and performed the conditions and agreements as stipulated and paid the fixed rentals, they might exercise the option, at the end of each month, of renewing the leaseholds, they having the right to repeat these renewals indefinitely." Respondents' theory of the terms demised by these same leases is alleged in the bill as follows: "That the respondents are contending, and since May 31st, 1919, have contended, that the leasehold interests of the petitioners are nothing more than month to month ten-

ancies, subject, even from the month immediately following the said auction, to-wit, the month of July, 1904, and notwithstanding the said premiums paid June 22nd and June 27th, 1904, to determination at the end of any month, at the will of the original lessor or his assignees."

On October 18, 1904, Young Tuck assigned his lease of the market premises to the respondent, the Oahu Market Company, Limited, and the latter having on July 1, 1919, become the owner of the fee, leased the premises to the respondents Young Sak Cho and Charles F. Chillingworth for a term of 10 years from that date.

The attornment by the respective lessees of stalls and/or their respective assignees to the Oahu Market Company, Limited, the payment and acceptance of the full rent reserved up to and including May 31, 1919, as also the tender by them to the Oahu Market Company, Limited, on June 1 and July 2, 1919, and to Young Sak Cho and Chillingworth on August 1 and September 2 following of the monthly rental in advance and its refusal, as also their observance and performance of the conditions and agreements contained in their respective leases are fully set forth in the bill.

To take the prior leases out of the statute of frauds the bill alleges: "That, pursuant to the said oral leasing the tenants mentioned in paragraphs (5-a) and (6) entered into possession of the said tables (stalls), they and their assignees holding the same continuously from on or about July 1st, 1904, up to the present, making permanent improvements upon the premises in the year 1914, or thereabout, to an extent of approximately $11,000.00, with the knowledge and consent of the respondent, The Oahu Market Company, Limited, and paying, throughout such period of time, rentals at the rate of $15.00 a month for a meat or fish table and $14.00 a month for a vegetable or grocery stall."

Complainants invoked the equity jurisdiction of the court upon the ground of prevention of a multiplicity of suits at law. The allegations of the bill in that regard are as follows:

"(11)    That on May 31st, 1919, the respondent, The Oahu Market Company, Limited, notified the petitioners, other than your petitioner, C. Q. Yee Hop & Company, Limited, but including said petitioner's predecessor in interest and right, said copartnership of C. Q. Yee Hop & Company, that the rental for the tables (stalls) occupied by them, and for which therefor they had paid rentals at the rate of $15.00 a month for a meat or fish table and $14.00 a month for a vegetable or grocery stall, would, beginning June 1st, 1919, be $25.00 a month."

"(14)    That, on July 31st, 1919, the respondents, Young Sak Cho and Charles F. Chillingworth, in writing notified the petitioners, other than your petitioner, C. Q. Yee Hop & Company, Limited, but including said petitioner's predecessor in interest and right, said copartnership of C. Q. Yee Hop & Company, that the rental for the tables (stalls) occupied by them, and for which theretofore they had paid rentals at the rate of $15.00 a month for a meat or fish table and $14.00 a month for a vegetable or grocery stall, would, beginning September 1st, 1919, be $30.00 a month, and further that, if these increased rentals were not paid by September 1st, 1919, actions in summary possession would be instituted against the petitioners, other than your petitioner, C. Q. Yee Hop & Company, Limited, but including said petitioner's predecessor in interest and right, said copartnership of C. Q. Yee Hop & Company, to oust them from their tables (stalls)."

"(15)    That, since July 31st, 1919, the respondents, Young Sak Cho and Charles F. Chillingworth, have further notified the petitioners, other than your petitioner, C. Q. Yee Hop & Company, Limited, but including said petitioner's predecessor in interest and right, said copartnership of C. Q. Yee Hop & Company, that, in view of the refusal of the petitioners to pay the said increased rentals demanded, they, the said respondents, are contemplating

the bringing monthly of separate actions in assumpsit for the said rentals against the business concerns, individuals and copartnerships, comprised of the petitioners, other than your petitioner, C. Q. Yee Hop & Company, Limited, but including said petitioner's predecessor in interest and right, said copartnership of C. Q. Yee Hop & Company."

"(19)  That, on August 16th, 1919, before the time set by the respondents, Young Sak Cho and Charles F. Chillingworth, in their notification to the petitioners, other than your petitioner, C. Q. Yee Hop & Company, Limited, but including said petitioner's predecessor in interest and right, said copartnership of C. Q. Yee Hop & Company, that proceedings in summary possession would be instituted, an action in assumpsit was brought by the respondents, Young Sak Cho and Charles F. Chillingworth, against the petitioner, Wong Pun (Pang), for failure to pay a rental of $25.00 a month for the months of June, July and August, for his use of table (stall) No. 24; and that upon judgment being given in the Court of the District Magistrate in favor of the plaintiffs therein, they thereupon immediately took out a writ of execution and attempted to levy upon the said table (stall) No. 24, although well knowing that such a writ of execution could not properly issue until the defendant therein had been given an opportunity to appeal to the Circuit Court or file a supersedeas bond."

"(21)  That the petitioners have no plain, adequate and complete remedy at law, but if left to a supposed remedy at law, a multiplicity of suits will be necessary for the hearing and determination of their separate and individual claims and rights against the respondents herein, all of which claims and rights arise out of the same events and transactions and depend upon the same question of law and similar matters of fact, all as hereinabove set forth; and that, for this reason among others, this Court of Equity has and should exercise jurisdiction in order to prevent a multiplicity of suits and in this one proceeding to give complete and substantial relief to each and all of these petitioners."

To the original bill of complaint respondents demurred

and the demurrer being overruled an interlocutory appeal was allowed to this court, resulting in the affirmance of the decree of the lower court. See 25 Haw. 494. Upon remand and answer filed the cause proceeded to hearing upon the merits during the progress of which complainants from time to time, with leave of court, amended portions of their bill, such amendments ultimately crystallizing in a final "second revised amended petition" to which the respondents again demurred, alleging, however, the following new and additional ground: "That there is not a common interest in the petitioners in the subject matter of the suit, sufficient to enable them to join in their revised second amended petition and the prayer for relief therein contained." This demurrer was overruled.

The court by its final decree granted the prayer of the bill as to all leases granted at the auction sale of June 22, 1904, including three leases as modified in 1914, and one lease granted in July, 1904, and dismissed the bill as to the remainder. Appeals were taken by the respondents and cross-appeals by certain of the complainants.

At the outset we are met by complainants' objection that the respondents by not urging this new and additional ground of demurrer to complainants' original bill the complainants must be taken to have waived the same and cannot be heard to complain. With this we cannot agree. To each amended bill as presented the respondents were entitled to plead anew by way of demurrer. Holding as we do that the objection of the respondents was jurisdictional, their failure to urge it in the first instance did not constitute a waiver. The objection to the court's jurisdiction having been raised by demurrer to the second revised petition, it was properly before the court and it was the duty of the court to pass upon it. This duty was recognized by the trial court, and it was not in error

in so doing.   See *Nawahie* v. *Goo Wan Hoy,* 26 Haw. 137, 146.

The demurrer, however, upon this new and additional ground should have been sustained.   The court was without jurisdiction in equity upon the joint bill of complaint of these complainants to hear and determine the several separate and distinct purely legal rights involved in the bill, depending as they do upon different disputed issues of fact applicable to each lease and requiring different findings of fact as to each.

No equitable grounds of relief are alleged in the bill other than the avoidance of a multiplicity of suits at law.

Equity has jurisdiction at the instance of several complainants to hear and determine rights purely legal where from the community of interest of the complainants in the subject-matter of the suit and the common application to all alike of the issues of fact and law involved, numerous actions at law may with convenience to all the parties be heard and determined in one proceeding.

Professor Pomeroy in his excellent treatise on Equity Jurisprudence says:

"It will aid us in reaching the true theory as well as in determining the extent and limitations of the doctrine, if we can fix at the outset all the *possible* conditions in which a multiplicity of suits can arise, and can thus furnish a source of or occasion for the equity jurisdiction in their prevention by settling *all* the controversy and *all* the rights in one single judicial proceeding.   All these *possible* conditions may be reduced to the four following classes: * * * 3.   Where a number of persons have separate and individual claims and rights of action against the same party, A, but all arise from some common cause, are governed by the same legal rule, and involve similar facts, and the whole matter might be settled in a single suit brought by all these persons uniting as co-plaintiffs, or one of the persons suing on behalf of the others, or

even by one person suing for himself alone. The case of several owners of distinct parcels of land upon which the same illegal assessment or tax has been laid is an example of this class." 1 Pom. Eq. Juris., 4th ed., Sec. 245.

"Suits have often been sustained by a single plaintiff against a numerous class of defendants, and by or on behalf of a numerous class of plaintiffs against a single defendant, avowedly on the ground of 'preventing a multiplicity of suits', where there was no relation existing between the individual members of the class and their common adversary to which the term 'privity' was at all applicable. Of course there must be *some* common relation, some common interest, or some common question, or else the decree of a court of equity, and the relief given by it in the one judicial proceeding, *could not by any possibility avail to prevent the multiplicity of suits* which is the very object of its interference." *Id.*, Sec. 251.

"From a careful comparison of the actual decisions embraced in the third and fourth classes, and which are quoted under the foregoing paragraphs, the following propositions are submitted as established by principle and by authority, and as constituting settled rules concerning this branch of the equitable jurisdiction. In that particular family of suits, whether brought on behalf of a numerous body against a single party, or by a single party against a numerous body, which are strictly and technically 'bills of peace,' in order that a court of equity may grant the relief and thus exercise its jurisdiction on the ground of preventing a multiplicity of suits, there does and must exist among the individuals composing the numerous body, or between each of them and their single adversary, a common *right*, a community of interest in the *subject-matter of the controversy*, or a common *title* from which all their separate claims and all the questions at issue arise; it is not enough that the *claims* of each individual being separate and distinct, there is a community of interest merely in the *question of law or of fact* involved, or in the *kind and form of remedy* demanded and obtained by or against each individual." *Id.*, Sec. 268.

"The jurisdiction, based upon the prevention of a

multiplicity of suits, has long been extended to other cases of the third and fourth classes, which are not technically 'bills of peace,' but are 'analogous to' or 'within the principle of' such bills.  Under the greatest diversity of circumstances, and the greatest variety of claims arising from unauthorized public acts, private tortious acts, invasion of property rights, violation of contract obligations, and notwithstanding the positive denials by some American courts, the weight of authority is simply overwhelming that the jurisdiction may and should be exercised, either on behalf of a numerous body of separate claimants against a single party, or on behalf of a single party against such a numerous body, although there is no 'common title,' nor 'community of right' or of 'interest in the subject-matter', among these individuals, but where there is and because there is merely a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each ·individual member of the numerous body." *Id.,* Sec. 269.

We are not unmindful of the severe criticism to which some of the principles enunciated by that learned author have been subjected, but in the main the language quoted represents the weight of authority with this qualification, however, that there should be excluded from the jurisdiction of equity all cases where the rights of the parties are purely legal and concerning whom there are different disputed issues of fact requiring separate and distinct findings of fact as to each.  This qualification is recognized by the annotator of the original text of Pomeroy in the following language:

"It seems desirable to further emphasize and illustrate the author's statement that in cases apparently falling within classes third and fourth, where the jurisdiction depends on the multitude of plaintiffs or defendants, 'there must be *some* common relation, some common interest, or some common question' in order that the one proceeding in equity may really avail to prevent a multiplicity of suits.  The equity suit must result in a *simplifi-*

*cation or consolidation of the issues;* if, after the numerous parties are joined, there still remain separate issues to be tried between each of them and the single defendant or plaintiff, nothing has been gained by the court of equity's assuming jurisdiction. In such a case, 'while the bill has only one number upon the docket and calls itself a single proceeding, it is in reality a bundle of separate suits, each of which is no doubt similar in character to the others, but rests nevertheless upon the separate and distinct liability of one defendant' in cases resembling those of the fourth class, or upon the separate and distinct claim of one plaintiff, in cases resembling those of the third class." *Id.,* Sec. 251½.

Otherwise, it might be proper for equity, under the guise of preventing a multiplicity of suits, to entertain jurisdiction in one case of numerous actions on the case for damages occasioned the complainants by the single negligent act of the defendant, irrespective of the different disputed issues of fact and the necessity of different findings of fact as to each complainant accordingly as different defenses were interposed or different rules for the measure of damages were invoked by the defendant as applicable to different complainants.

The test of jurisdiction is best expressed in the case of *Hale* v. *Allinson,* 188 U. S. 56, 77, where the court said:

"Cases in sufficient number have been cited to show how divergent are the decisions on the question of jurisdiction. It is easy to say it rests upon the prevention of a multiplicity of suits, but to say whether a particular case comes within the principle is sometimes a much more difficult task. Each case, if not brought directly within the principle of some preceding case, must, as we think, be decided upon its own merits and upon a survey of the real and substantial convenience of all parties, the adequacy of the legal remedy, the situations of the different parties, the points to be contested and the result which would follow if jurisdiction should be assumed or denied; these various matters being factors to be taken into consideration upon the question of equitable jurisdiction on

this ground, and whether within reasonable and fair grounds the suit is calculated to be in truth one which will practically prevent a multiplicity of litigation and will be an actual convenience to all parties, and will not unreasonably overlook or obstruct the material interests of any."

Measured by the language of this decision, this case is clearly not one within the equity jurisdiction of the circuit judge to prevent a multiplicity of suits. That the "points to be contested" are not common to all the complainants but are material and pertinent solely to the individual leases affected is clearly indicated by an analysis of the allegations of the bill and the evidence necessary to their support.

There are 26 different leases. Conceding both auctions to have occurred under identically similar circumstances and each lease granted to embody identically similar terms, they were auctioned at different times for different premiums, to different persons. Four leases were concededly not the result of the auctions. And assuming that the facts surrounding the granting of these later leases were plead as advantageously to the pleader as the circumstances permitted, we must assume that there are as many different sets of facts and circumstances surrounding their granting as there are leases. The same observation is consistent with the allegations of the modifications of seven of the leases in 1914.

The right of the lessees to exercise the monthly option of renewal was dependent upon their observance and performance of the covenants and conditions of the respective leases on their part to be kept and performed. Assuming acceptance of rent prior to May 31, 1919, to have constituted a waiver of all questions as to rights of the complainants or their predecessors in interest to exercise such option, since the refusal of rent by these respondents on June 1, 1919, and up to time of suit, their acts in that

regard are open to the scrutiny and dispute of the respondents.

But one of the complainants, Wong Pun, is an original lessee. The legal title of the other complainants to the several estates created by the several leases in which they are severally interested depends upon immediate or mesne assignments from original lessees. Their respective titles are subject to dispute and each depends upon separate and distinct deraignments of title pertinent to and applicable solely to the individual lease to which it applies.

To take each lease out of the statute of frauds it was incumbent upon the several owner or owners to show not alone that he or they owned a lease for a term of years but also that he or they or their predecessors in interest made permanent improvements upon the premises demised which were referable to and made in reliance upon the particular lease claimed. In other words, each lease depended for its enforcement upon proof of improvements referable to it and it alone. This necessarily involved different disputed evidence by each present owner touching the location, permanency and value of the particular improvements made by such owner or owners or his or their predecessors in interest in reliance upon his or their particular lease, and different findings of fact as to each.

Moreover, not only does the bill present separate and distinct issues as to each owner or owners of separate leases material and pertinent alone to each lease and not to all the leases alike, but the general allegation of the bill that the respondents claim that the tenures are merely month to month tenancies, admits of the assumption that other different and additional defenses as yet undisclosed, are applicable to individual leases.

The "real and substantial convenience of all the parties" is not best subserved by a single action. Each lease

owner must perforce attend the hearing and taking of evi-
dence upon all the issues pertaining to 25 other leases in
which he is not interested in any way.   The respondents
are required to litigate 26 different leases at the same
time.

The "situations of the different parties" are different.
Their interests are several and not joint.   The result "if
jurisdiction should be assumed" would be the trial of 26
different causes, purely legal, depending upon different
disputed evidence, and requiring different findings of
fact as to each, while "if jurisdiction should be denied"
the complainants are protected by "the adequacy of the
legal remedy" and the respondents preserved to their
right of trial by jury under their constitutional guaranty.

The remedy at law is adequate.   The complainants are
in possession.   No injury, actual or threatened, has been
occasioned the premises demised by the several leases.
That any of the complainants have a valid and subsisting
lease for a term of years would not alone be available as
a defense (*Ching Tam Shce* v. *Hall,* 19 Haw. 190; *Chce
Yit Tung* v. *Achi,* 26 Haw. 642), but, if true, would con-
stitute a good defense to any action whether in assumpsit
for rent or for summary possession predicated upon the
assumption of its non-existence.   That upon a judgment
in assumpsit the statute (Sec. 2510, R. L. 1915,) permits
upon good cause shown, the issuance of execution not-
withstanding appeal in default of the appellant giving a
sufficient bond conditional upon satisfying the judgment
in the event the same is affirmed against him. in the
appellate court, does not detract from the adequacy of the
remedy.   Nor are we concerned that upon judgment for
summary possession for nonpayment of rent, in default
of the payment of rent and costs and charges of the pro-
ceedings, or satisfactory security therefor as provided by
Sec. 2762, R. L. 1915, a writ of possession notwithstanding

the appeal, may issue under the statute. The issues between these complainants and respondents in an action of summary possession would involve the claim of a tenancy for a term of years on the one hand and the denial of anything more than a month to month tenancy on the other, and the most that might be exacted from defendant appellant to stay a writ of possession is a bond against "damages" as provided by Sec. 2763 as amended by Act 93, S. L. 1923.

All these "factors" lead inevitably to the conclusion that this suit is not, within the language quoted from the, *Allinson* case, cognizable in equity to prevent a multiplicity of suits.

The decree appealed from is vacated and set aside and consistently with this opinion, the cause must be remanded with instructions to the trial court to sustain respondents' demurrer to the complainants' second revised amended petition and dismiss the same.

It is so ordered.

*W. B. Lymer, W. J. Robinson* and *Marguerite K. Ashford* (*Perry & Matthewman* with them on the briefs) for petitioners.

*E. M. Watson* (*Watson, Clemons & Hite* on the briefs) for respondents.